## Jill Morway v. Bruce Trombly and Town of Milton

[789 A.2d 965]

No. 00-499

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed December 28, 2001

John J. Bergeron and Kerin E. Stackpole of Bergeron, Paradis & Fitzpatrick, LLP, Burlington, for Plaintiff-Appellant.

Joseph A. Farnham of McNeil, Leddy & Sheahan, Burlington, for Defendants-Appellees.

**Johnson, J.** Plaintiff Jill Morway, who filed a negligence action against defendants Town of Milton and its snowplow operator Bruce Trombly after being injured in a car accident allegedly caused by Trombly, appeals the superior court's decision granting defendants' joint motion for summary judgment. Plaintiff does not challenge the grant of summary judgment in favor of the Town, but contends that the court erred in granting Trombly summary judgment based on its conclusion that his operation of the snowplow was a discretionary duty immunizing him from suit, and that, in any event, plaintiff failed to demonstrate that Trombly breached any legal duty owed to her. We conclude that Trombly's operation of the snowplow was a ministerial, rather than a discretionary, duty that did not accord Trombly immunity from plaintiff's suit. Further, we conclude that the facts alleged by plaintiff were sufficient to avoid summary judgment and allow a jury to determine whether Trombly was negligent, and, if so, whether his negligence was a proximate cause of the accident. Accordingly, we reverse the superior court's grant of summary judgment in favor of Trombly, and remand the matter for further proceedings.

At the time of the accident, which occurred on the morning of January 1, 1999, plaintiff was a passenger riding in the front seat of a car driven by her husband, Kyle Morway. Their car came upon and began following Trombly, who was operating a snowplow truck for the Town. There were snowdrifts on the road, and the wind was blowing. At one point, another vehicle approached the truck from the opposite direction. After passing the truck, that vehicle collided with the Morways' vehicle. Apparently, both drivers were blinded by blowing snow caused by the truck's plow hitting the snowdrifts. The investigating police officer concluded that the primary cause of the accident was the Morways' vehicle drifting to the left of center on the road, and the secondary cause was the Morways' vehicle following the snowplow truck too closely.

In March 1999, plaintiff brought suit against the Town and Trombly, alleging that she was injured as a result of Trombly's negligence in operating the snowplow truck. After the parties engaged in significant discovery, defendants filed a joint motion for summary judgment, asserting that the doctrine of sovereign immunity shielded the Town from liability, and that the doctrine of qualified official immunity shielded Trombly from liability. Plaintiff opposed the motion, but the court granted summary judgment to both defendants, ruling that (1) under the doctrine of sovereign immunity, the Town was immune from suits such as plaintiff's alleging negligence with respect to governmental functions, including road maintenance; and (2) under the doctrine of qualified official immunity, Trombly was immune from suits such as plaintiff's alleging negligence with respect to discretionary acts performed in good faith during the course of his employment with the Town. The court concluded that Trombly's operation of the snowplow truck was discretionary in nature because he had to make decisions concerning the speed of the truck and the angle of the plow in deciding how best to negotiate snowdrifts while weighing the safety of others on the road. The court also concluded that, notwithstanding issues of immunity, plaintiff had failed to show that defendants breached any duty owed to her. Finally, the court ruled that plaintiff could not rely on the principle of res ipsa loquitur (the thing speaks for itself) to prove Trombly's negligence because she could not show that there were any facts to infer or that Trombly owed her a legal duty.

On appeal, plaintiff argues that the court erred in granting summary judgment to Trombly based on the doctrine of qualified official immunity because his operation of the snowplow truck concerned a ministerial act not performed in good faith. Plaintiff also argues that the court erred in concluding that Trombly owed her no legal duty, and that she failed to demonstrate that he breached any legal duty owed to her. Finally, plaintiff contends that there were material facts in dispute that preclude summary judgment.

I.

When we review a decision to grant summary judgment, we apply the same standard as that applied by the trial court: summary judgment is appropriate if the moving party proves that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. *White v. Quechee Lakes Landowners' Ass'n*, 170 Vt.

25, 28, 742 A.2d 734, 736 (1999). In determining whether there is a genuine dispute over material facts, "we accept as true allegations made in opposition to the motion for summary judgment, so long as they are supported by affidavits or other evidentiary material." *Id.*

## II.

### A.

The primary issue we must resolve is whether Trombly was entitled to judgment as a matter of law based on the doctrine of qualified official immunity. But before considering that doctrine as it applies to the facts of this case, we address the apparent aberration raised by the possibility of allowing a Town to be immune from suit while holding its employees personally liable for performing routine duties in good faith within the scope of their employment.

Municipal immunity is a common-law doctrine dating back to the mid-1800s in Vermont. *Hillerby v. Town of Colchester,* 167 Vt. 270, 272, 706 A.2d 446, 447 (1997). To alleviate its harsh results, many states abolished general municipal immunity and eventually replaced it with specific statutes addressing municipal liability in particular situations. *Id.* at 284-85, 706 A.2d at 454 (Johnson, J., dissenting). Vermont, however, continues to limit the scope of general municipal immunity only through the arbitrary "governmental-proprietary distinction." *Hudson v. Town of East Montpelier,* 161 Vt. 168, 177-78 n.3, 638 A.2d 561, 567 n.3 (1993) (detailing universal criticism of doctrine). While acknowledging the need to reform the rules of municipal liability in Vermont, this Court has determined that the Legislature is better suited, because of its fact-finding and problem-solving process, "to fashion a more reasonable and workable doctrine." *Hillerby,* 167 Vt. at 276, 706 A.2d at 449.

█ Thus far, however, the Legislature has maintained the current system of municipal immunity, and has done nothing to protect lower-level municipal employees from tort suits in situations in which the town is immune from suit. The Legislature has not extended the state's waiver of sovereign immunity to municipalities in Vermont's tort claims act. See 12 V.S.A. § 5601 ("state of Vermont" is liable for negligent or wrongful act of "employee of state" acting within scope of employment to same extent as private person would be). Nor has the Legislature required tort suits to be brought exclusively in the name of the municipality, cf. 12 V.S.A. § 5602 (when state employee

causes damage or injury while acting within scope of employment, exclusive right of action lies against state), or required municipalities to defend or indemnify municipal employees to the extent required of the state. See *Hudson*, 161 Vt. at 177, 638 A.2d at 567. Compare 24 V.S.A. § 901 (suits against municipal or town school district "officer" must be brought against municipalities; municipalities must assume legal fees incurred by officers for their unmalicious acts committed while performing official duties) and 24 V.S.A. § 1313 (incorporated villages "may" defend and indemnify public "officer" against suits for injuries caused by officer discharging official duties) with 3 V.S.A. § 1101 (state obligated to defend state employee in civil action alleging damages arising from act or omission in performance of employee's official duties) and 12 V.S.A. § 5606(a) (state obligated to indemnify state employee for judgment rendered against employee for acts or omissions within scope of employment).

As a result, there will be situations in which municipal employees must answer to tort suits claiming that the employees committed negligent acts while acting within the scope of their employment, even though the municipality is immune from suit. It is important to note, however, that although the employee in such circumstances may technically incur personal liability should negligence be found, there generally is no personal liability in fact. As a practical matter, municipalities, such as the Town of Milton in this case, purchase insurance and defend and indemnify their employees against liability for judgments based on their acts performed within the scope of their municipal duties. In general, municipalities waive their sovereign immunity to the extent of insurance coverage. See 29 V.S.A. § 1403. But the Legislature "has specifically authorized municipalities to enter into intermunicipal agreements for liability insurance purposes, see 24 V.S.A. § 4942, participation in which does *not* constitute a waiver of immunity." *McMurphy v. State*, 171 Vt. 9, 15, 757 A.2d 1043, 1048 (2000). Thus, municipalities are able to defend and indemnify their employees in situations such as the present case.

## B.

We now return to the issue of whether Trombly was entitled to judgment as a matter of law based on the court's determination that he is immune from plaintiff's suit. Under the doctrine of qualified official immunity, which we have applied in cases involving municipal

employees, "lower-level government employees are immune from tort liability when they perform discretionary acts in good faith during the course of their employment and within the scope of their authority." *Hudson*, 161 Vt. at 171, 638 A.2d at 563. Plaintiff concedes that at the time of the accident Trombly was performing duties in the course of his employment and within the scope of his authority. She contends, however, that his negligent operation of the snowplow truck cannot be characterized as a "good faith" act, and that, in any case, he was performing a ministerial, rather than a discretionary, act in operating the truck.

■ If we determine that Trombly's operation of the snowplow truck was a ministerial rather than a discretionary act, Trombly is not immune from suit, regardless of whether he acted in good faith. Accordingly, we first address whether the alleged negligent conduct was ministerial or discretionary in nature. In reviewing this prong of the qualified-immunity test in past cases, we have emphasized the importance of considering the specific facts of each case in light of the purposes behind the immunity doctrines, rather than relying on literal or dictionary definitions of the terms. *Johnson v. State*, 165 Vt. 588, 589-90, 682 A.2d 961, 963 (1996) (mem.); *Hudson*, 161 Vt. at 172, 638 A.2d at 564.

In *Hudson*, we recognized that

> the doctrine of qualified official immunity serves primarily to shield government employees from exposure to personal tort liability that would (1) hamper or deter those employees from vigorously discharging their duties in a prompt and decisive manner, and (2) unfairly subject employees who have a duty to exercise discretion regarding matters of public policy to the judgment of those acting within a judicial system that is ill-suited to assess the full scope of factors involved in such decisionmaking.

161 Vt. at 172, 638 A.2d at 564. Thus, courts will not hold government employees personally liable "for policy decisions that are based on factors such as availability or allocation of public resources or public acceptance because traditional tort standards do not provide an adequate basis for evaluating these types of decisions in coordinate branches of government." *Id.* at 173-74, 638 A.2d at 565.

We applied these principles to the facts of *Hudson*, which concerned town employees sued for their alleged negligence in

placing gravel over a ledge protruding from a dirt road. In claiming that their actions were discretionary rather than ministerial in nature, the employees pointed out that they were not told how much gravel to use, how to pack the gravel or cover the ledge, or how long to leave warning signs at the site. We rejected this position, holding that although the employees might have had some discretion in how to perform their job, their decisions did not require "a weighing of the type of public policy considerations that would warrant shielding [them] from liability." *Hudson*, 161 Vt. at 175, 638 A.2d at 566. Because their decisions did not require them to balance potential benefits and risks to the public, they did not have "the right to be wrong," and, thus, to be immune from suit. *Id.* (quoting *Libercent v. Aldrich*, 149 Vt. 76, 82, 539 A.2d 981, 984 (1987) (internal quotes omitted)).

We have virtually the same situation here. Trombly may have had the discretion to make decisions concerning the speed of the truck or the position or angle of the plow, but these are not the type of discretionary determinations that immunize governmental employees from liability for their negligence. See *Ham v. Los Angeles Cty.*, 189 P. 462, 468 (Cal. 1920) ("it would be difficult to conceive of any official act, no matter how directly ministerial, that did not admit of some discretion in the manner of its performance, even if it involved only the driving of a nail"); cf. *Andolino v. State*, 624 P.2d 7, 9 (Nev. 1981) (decision regarding which areas of highway to plow was operational, and not discretionary, in nature). Accordingly, we conclude that Trombly was not entitled to summary judgment based on the doctrine of qualified official immunity.

We recognize that it may seem unfair to some that a municipal snowplow operator may be subject to personal liability for doing a difficult job under difficult circumstances. The issue in this appeal is whether Trombly should be immune from suit and any potential liability, not whether he is actually liable to plaintiff for his actions. Plaintiff still must prove negligence on Trombly's part. In any event, we have an obligation to abide by the principles behind the policy of providing limited immunity from suit to government employees. We may not ignore those principles to reach a certain result. Doing so would distort the policy for future immunity cases and lead us back to the morass of cases seeking to distinguish ministerial and discretionary acts through a literal interpretation of the terms. Under the principles outlined in *Hudson*, Trombly plainly was not

performing the type of duties that would make him immune from civil tort actions.

## III.

The superior court determined, however, that, notwithstanding issues of immunity, (1) plaintiff could not show that Trombly breached a duty owed to her; and (2) the doctrine of res ipsa loquitur (the thing speaks for itself) is inapplicable under the facts of this case. See Black's Law Dictionary 1311-12 (7th ed. 1999) (res ipsa loquitur is doctrine providing that, in some circumstances, mere fact of accident's occurrence raises inference of negligence). In the court's view, plaintiff could not rely on the principle of res ipsa loquitur to show that Trombly was negligent because there were no gaps in the facts to infer and, in any case, plaintiff could not show that Trombly owed her a legal duty.

The superior court's ruling that plaintiff could not prove Trombly owed her a legal duty is plainly wrong and inconsistent with its acknowledgment that Trombly, like all drivers, had a general duty to maintain a proper lookout and operate his truck in a safe manner. See *Smith v. Gainer*, 153 Vt. 442, 445-46, 571 A.2d 70, 71-72 (1990); see also 23 V.S.A. § 1081(a) (no driver shall drive vehicle on highway at speed that is greater than is reasonable or prudent under conditions, having regard for actual and potential hazards then existing).

We also disagree with the court's ruling that, as a matter of law, plaintiff could not prove negligence on the part of Trombly. The facts, viewed most favorably to plaintiff, see *Pierce v. Riggs*, 149 Vt. 136, 139, 540 A.2d 655, 657 (1987) (facts asserted by party opposing summary judgment, if supported by affidavits or other evidentiary material, are regarded as true), revealed that Trombly was traveling approximately thirty miles per hour when he struck high snowdrifts in the road on a windy winter day. They further indicated that Trombly was familiar with the blinding "white-outs" that can be caused by a plow striking drifts, that he observed the vehicle coming toward him from the other side of the road, that he knew at one point that a car was following him, and that he did not slow down before striking the drifts immediately preceding the accident. The parties disputed whether Trombly realized at the time he struck the drifts that the Morway vehicle was still following him.

■ Summary judgment is not appropriate in situations involving facts that leave some doubt as to whether a reasonable jury would find the defendant negligent. Particularly where there is no settled rule of diligence more specific than a general reasonableness standard, "negligence is ordinarily a question for the jury." *Baisley v. Missisiquoi Cemetery Ass'n*, 167 Vt. 473, 480, 708 A.2d 924, 928 (1998). This is not a case in which we can know with certainty, given the record on appeal, whether a reasonable jury would find Trombly negligent or not. See *Thompson v. Green Mount. Power Corp.*, 120 Vt. 478, 483, 485, 144 A.2d 786, 789, 790 (1958) (foresight of harm lies at foundation of negligence; foreseeable consequences may be significant in determining scope of legal duty and whether duty was violated). While we acknowledge that motorists driving behind or passing a snowplow must be alert to the obvious possibility of blowing snow, it is conceivable that a reasonable jury could determine, upon a full exploration of the facts, that Trombly was negligent in this instance. Accordingly, the superior court erred in granting summary judgment to Trombly on the basis that plaintiff could not demonstrate Trombly's negligence.

Finally, while we agree with the superior court that the doctrine of res ipsa loquitur generally applies only when there is a gap in the evidence and some facts are left to inference, see Black's Law Dictionary, *supra*, at 1312 (application of doctrine presupposes that some part of causal process is known, but that evidence connecting defendant's act or omission with accident's causal process is lacking), the parties have not briefed the issue of whether the court properly rejected plaintiff's partial reliance on res ipsa loquitur. Moreover, the record on appeal is insufficient for us to determine whether an instruction on res ipsa loquitur would be appropriate should this case come before a jury. In any event, regardless of the nature of plaintiff's theory, she has alleged sufficient facts supported by affidavits or other evidentiary material to reach the jury on the question of whether Trombly was negligent.

*Reversed and remanded.*

**Amestoy, C.J.,** concurring. As the majority observes, we are once again confronted with the potential aberration of a town employee being held personally liable for the good faith performance of his duties within the scope of his employment when the employer Town is immune from suit. Although I disagree with the Court's

analysis in *Hudson v. Town of East Montpelier*, 161 Vt. 168, 638 A.2d 561 (1993), I acknowledge that its holding controls the result here, and therefore concur. See *O'Connor v. City of Rutland*, 172 Vt. 570, 570, 772 A.2d 551, 552 (2001) (mem.) (we do not lightly overturn recent precedent).

I write separately to note that, in addition to the majority's identification of potential legislative responses to the quandary of exposure of municipal employees to tort liability in situations in which the town is immune from suit (see 173 Vt. at 270-71, 789 A.2d at 968-69), legislative remedies may exist in the narrower context of "snow and ice" or "weather" immunity statutes. Thus, for example, some legislatures have chosen to extend immunity to municipal employees for claims arising from weather conditions on highways. See, e.g., 745 Ill. Comp. Stat. 10/3-105 (2001).

A legislative response which extends immunity to lower-level municipal employees only for "weather" or "snow and ice" is, of course, open to criticism from those who would prefer to see a broader "modernization" of our law on municipal liability. As the dissents of Justice Dooley and Justice Johnson in *Hillerby v. Town of Colchester*, 167 Vt. 270, 276-94, 706 A.2d 446, 449-60 (1997), amply demonstrate, consensus on the need for change of the law is much easier to reach than agreement on how to change the law. At the very least, however, our decision in this case should prompt the Legislature to exercise the fact-finding and problem-solving process we have previously identified as better suited for this area of the law. *Id.* at 276, 706 A.2d at 449.

I concur with the majority's opinion exposing municipal snowplow operators to individual personal liability for a good faith attempt to carry out the duties assigned to them because current law compels the result — not because the result makes sense.