2004 VT 77

## Marcel Rochon and Raymonde Rochon v. State of Vermont

[862 A.2d 801]

No. 03-316

Present: Amestoy, C.J., Johnson, Skoglund and Reiber, JJ., and Allen, C.J. (Ret.), Specially Assigned

Opinion Filed August 27, 2004

*Peter F. Langrock, James W. Swift* and *Abby C. Moskovitz* of *Langrock Sperry & Wool, LLP*, Middlebury, for Plaintiffs-Appellants.

*William H. Sorrell,* Attorney General, and *Jennifer K. Reining* and *Timothy B. Tomasi,* Assistant Attorneys General, Montpelier, for Defendant-Appellee.

¶ 1. **Amestoy, C.J.** Plaintiffs appeal from a grant of summary judgment in favor of the State of Vermont in this suit for personal injuries caused by an accident with a police cruiser that was traveling to the scene of an emergency. Plaintiffs contend that Vermont's emergency vehicle statute, 23 V.S.A. § 1015, requires a showing of negligence before imposing liability, not a showing of recklessness. We reject plaintiffs' argument, and conclude that 23 V.S.A. § 1015 precludes an action in negligence and requires a showing of recklessness for injuries sustained in an accident with an emergency responder. We therefore affirm.

¶ 2. Plaintiffs argue that the trial court erred in granting defendant summary judgment based on the court's conclusion that 23 V.S.A. § 1015(c) requires a showing of recklessness. When this Court reviews a grant of summary judgment, we apply the same standard as the trial court. *Dillon v. Champion Jogbra, Inc.,* 175 Vt. 1, 2, 819 A.2d 703, 705 (2002). We will affirm the decision if there is no genuine issue of material fact and any party is entitled to a judgment as a matter of law. V.R.C.P. 56(c)(3). The following material facts are not in dispute.

¶ 3. On August 10, 1998, around nine o'clock in the evening, State Trooper Thomas Hodsden was dispatched to a domestic assault

complaint two miles from his house. The dispatcher told the trooper that the assailant was attempting to get the victim out of a locked bathroom. Trooper Hodsden left his house and drove north on Route 22A. He turned on his emergency lights, but, to avoid giving advance warning to the alleged assailant, he did not use the siren.

¶ 4. Trooper Hodsden proceeded to the scene at the posted speed limit of fifty miles per hour. As he traveled along a flat stretch of road, the trooper spotted a vehicle about 200 yards in front of him. The vehicle was driven by plaintiff, Marcel Rochon, with his wife Raymonde Rochon riding as a passenger. When Trooper Hodsden approached within 100 yards of plaintiffs' vehicle, he noticed that its brake lights were illuminated, and that the car was drifting towards the right. Assuming that the vehicle was pulling over to let him pass, Trooper Hodsden moved into the left lane to pass plaintiffs' vehicle. At the same moment, plaintiffs turned left into their driveway, and the trooper collided with plaintiffs. There was no evidence in the record that plaintiffs had their turn signal on, although plaintiffs claim that it is their practice to turn it on before entering their driveway. Trooper Hodsden claims that he did not see a turn signal before the collision.

¶ 5. Plaintiffs brought this suit against the State, claiming that it was liable for Trooper Hodsden's negligence, and that his negligence caused plaintiffs' injuries. The State moved for summary judgment, arguing that it was immune from suit under the doctrine of sovereign immunity. The trial court agreed. It concluded that emergency responders are liable for collision-related injuries caused by their reckless conduct. Plaintiffs failed to plead recklessness. Because plaintiffs did not plead a cognizable cause of action as required under Vermont's Tort Claims Act, sovereign immunity barred plaintiffs' suit. This appeal followed.

¶ 6. At issue in this case is whether the State's sovereign immunity precludes plaintiffs' cause of action. Although the State is generally immune from suit as a sovereign, it can expressly waive this immunity. *Searles v. Agency of Transp.*, 171 Vt. 562, 563, 762 A.2d 812, 813 (2000) (mem.). The State has done so through the Vermont Tort Claims Act (VTCA). See 12 V.S.A. § 5601(a) (imposing liability for "negligent [acts] . . . of an employee of the state while acting within the scope of employment . . . [just as] a private person would be liable"). The waiver requires plaintiffs to show that their allegations "'taken as true, will satisfy the necessary elements of [their] comparable state cause of action,'" or, in other words, their "private analog." *Denis Bail Bonds, Inc. v. State*, 159 Vt. 481, 486, 622 A.2d 495, 498 (1993) (citation

omitted). Plaintiffs' private analog in this case is negligence, the elements of which are a legally cognizable duty owed by the defendant to the plaintiff, a breach of that duty that proximately causes plaintiffs' injuries, and damages. *Powers v. Office of Child Support*, 173 Vt. 390, 398, 795 A.2d 1259, 1265 (2002). Thus, on its face, plaintiffs' complaint satisfied the private analog required to hold the State liable for the trooper's actions here.

¶ 7. The issue, then, is whether plaintiffs may sue the State for the negligence of an emergency responder who collides with another driver while proceeding to an emergency. The State argued success-fully below that 23 V.S.A. § 1015(c) precludes a negligence action for injuries caused in a collision with an emergency responder. Section 1015 sets forth the privileges and duties of emergency vehicles as they drive to emergencies. It allows the responder to violate certain rules of the road when driving to the scene of an emergency. See, e.g., 23 V.S.A. § 1015(a)(2) (emergency responders may proceed through red lights and stop signs); *id.* § 1015(a)(4) (emergency responders "may exceed the maximum speed limits"). But, § 1015(c) also provides that the permitted exceptions "shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others." 23 V.S.A. § 1015(c). The trial court construed § 1015(c)'s language to require a higher level of culpability — recklessness — to hold the driver liable. We agree.

¶ 8. When interpreting a statute, we must always give effect to the Legislature's intent. *Holmberg v. Brent*, 161 Vt. 153, 155, 636 A.2d 333, 335 (1993). We first look to the whole statute, striving to give effect to every word it contains. *In re Eastland, Inc.*, 151 Vt. 497, 499, 562 A.2d 1043, 1045 (1989). If the statute's meaning is plain and unambiguous, we enforce the statute as written. *Holmberg*, 161 Vt. at 155, 636 A.2d at 335.

¶ 9. The language of § 1015(c) comes from § 11-106 of the Uniform Vehicle Code, and has been interpreted by other jurisdictions. In construing the language at issue, the New York Court of Appeals concluded that the statute imposes civil liability upon a showing of reckless conduct only, while admonishing drivers of emergency vehicles to act with due regard for the safety of other persons. *Saarinen v. Kerr*, 644 N.E.2d 988, 990-91 (N.Y. 1994). The court reasoned that the statute's purpose was to give emergency responders

a "qualified privilege to disregard" certain road regulations in order to carry out their important duties. *Id.* at 992. Any other interpretation, the court observed, "would undermine the evident legislative purpose ... [to afford] operators of emergency vehicles the freedom to perform their duties unhampered by the normal rules of the road." *Id.* See also *Morris v. Leaf*, 534 N.W.2d 388, 391 (Iowa 1995) (interpreting statute identical to § 1015 in the context of a police chase, and concluding that "limiting personal liability for the consequences of high-speed chases to reckless rather than mere negligent conduct will provide for vigorous law enforcement without placing innocent bystanders at undue risk").

■ ¶ 10. Like the New York Court of Appeals, we had occasion to address the language of § 1015(c) in *Morais v. Yee*, 162 Vt. 366, 648 A.2d 405 (1994). In *Morais*, we examined whether police officers were entitled to qualified immunity for injuries a suspect sustained following a chase, and we held that because the Legislature established a clear duty under 23 V.S.A. § 1015(c), qualified immunity did not apply. *Id.* at 373, 648 A.2d at 410. After determining the source of the duty was § 1015(c), we construed the statute to require a showing of recklessness by the emergency responder before holding the responder liable for the injured party's damages. *Id.* (citing *Schatz v. Culter*, 395 F. Supp. 271, 274-75 (D. Vt. 1975), which interpreted § 1015(c) to require recklessness before imposing liability). Finally, we reversed the trial court's entry of summary judgment in favor of defendants, noting that "factual disputes, material to the determination whether defendants acted with *reckless disregard* in conducting the pursuit, preclude[d] summary judgment." *Id.* at 375, 648 A.2d at 411 (emphasis added). Our holding in *Morais* thus established that, to find an operator of an emergency vehicle liable for injuries caused while responding to an emergency call, the plaintiff must show that the operator acted recklessly.

¶ 11. We recognize that other jurisdictions that have examined language similar to § 1015(c) have construed their respective statutes to permit negligence claims against emergency responders. The Wisconsin Supreme Court, interpreting Wisconsin's emergency vehicle statute, determined that liability may be imposed upon a showing of negligence. *Estate of Cavanaugh v. Andrade*, 550 N.W.2d 103, 115 (Wis. 1996). The court concluded that "a negligence action may be sustained against an officer ... on the grounds that he or she breached the duty to operate the vehicle with 'due regard under the circumstances.'" *Id.*; see also *Wright v. City of Knoxville*, 898 S.W.2d

177, 179-80 (Tenn. 1995) (interpreting statute to allow claims against emergency responders for negligence). We find the reasoning of these jurisdictions unpersuasive, however, because the courts determined that the statute permitted negligence claims after examining only the "due regard" language, without reference to the "reckless disregard" language. By construing the statute to permit negligence claims against emergency responders, these courts make the reckless disregard language surplusage. The language of § 1015(c) does not end with the admonition to drive with due regard, but, rather, warns of consequences for driving with reckless disregard. We agree with the observation of the Texas Supreme Court that "[a]ny construction of this section to impose a standard of care of less than recklessness would make the 'reckless disregard' clause ineffectual surplusage." *City of Amarillo v. Martin*, 971 S.W.2d 426, 430 (Tex. 1998).

¶ 12. Plaintiffs argue, however, that negligence is the correct standard based on similar "due regard" language contained in 23 V.S.A. § 1050(c). That section states that operators of emergency vehicles are not relieved "from the duty to drive with due regard for the safety of all persons using the highway." The language in § 1050 does not contradict our conclusion about § 1015(c). Section 1050 was enacted to require drivers to pull over when emergency vehicles are approaching, or to make lane changes, if possible, when approaching a stationary emergency vehicle. The language in the statute is a general admonition to emergency responders that, while other cars have an obligation to pull to the side of the road, emergency responders must still drive with "due regard for the safety of" others. That admonition is consistent with the language in § 1015(c), which also requires emergency responders to drive with due regard for the safety of others. See *id.* (entirely reasonable to read "due regard" language as cautionary warning to emergency vehicle operators to drive with due regard to others, considering the privilege they are granted, while requiring operators to answer in damages for the consequences of their reckless conduct).

¶ 13. Our construction of § 1015(c) is consistent with the legislative purpose that prompted its enactment. Predicating emergency vehicle operator liability on the higher standard of recklessness strikes the best balance between the competing interests of allowing emergency personnel to respond to an emergency situation without unduly compromising public safety. Concern about exposing emergency

vehicle operators to liability for ordinary negligence was well articulated by the New York Court of Appeals: "As a practical matter, use of the undemanding ordinary negligence test — or even the more 'flexible' common-law negligence test that is applied in emergency situations — would lead to judicial 'second-guessing' of the many split-second decisions that are made in the field under highly pressured conditions." *Saarinen*, 644 N.E.2d at 992. Facing the threat of liability for simple negligence would deter emergency vehicle operators' willingness to act decisively using the judgment required to balance protecting the public with responding to emergencies.[1]

¶ 14. The balance the Legislature struck is no clearer than when viewed in the light of the facts of this case. Trooper Hodsden was called to a house where a woman locked herself in a bathroom for protection from a man who was trying to assault her. The trooper was told that the alleged assailant was trying to break into the bathroom where the victim had retreated for protection. The trooper drove within the speed limit and with his emergency lights on. When he saw plaintiffs' vehicle braking and drifting toward the right of the road, as they were required to do by law, see 23 V.S.A. § 1050(a), he made a split-second decision to continue at his speed to the house by passing in the left lane. His decision under these circumstances is exactly the type of decision that the Legislature intended to permit by requiring a higher degree of culpability for accidents involving emergency responders. Considering our prior decision in *Morais*, and the well-reasoned decision by the New York Court of Appeals, plaintiffs have failed to demonstrate that § 1015(c) permits an action in negligence for injuries caused by a driver responding to an emergency call.

¶ 15. Plaintiffs also contend that the trial court erred in granting summary judgment because their complaint may be construed as alleging reckless conduct, a question that is not susceptible to disposi-

---

[1] We take issue with the State's view, advanced at oral argument, that the Legislature intended 23 V.S.A. § 1015(c) to prompt emergency responders to take "calculated risks" when driving to the scene of an emergency. Although we recognize that the New York Court of Appeals used that phrase in *Saarinen*, it did so in emphasizing the need for emergency responders to act decisively not — as the State apparently infers — to encourage risk taking by emergency responders. The "reckless disregard" test is intended to preclude emergency responder liability for arguable misjudgments in responding to emergencies, not to encourage calculated risky judgments. See *Saarinen v. Kerr*, 644 N.E.2d 988, 992 (N.Y. 1994) ("The 'reckless disregard' test, which requires a showing of more than a momentary judgment lapse, is better suited to the legislative goal of encouraging emergency personnel to act swiftly and resolutely while at the same time protecting the public's safety to the extent practicable.").

tion on summary judgment because it is generally a matter for the trier of fact's determination. This claim is without merit. First, plaintiffs failed to plead recklessness in their complaint. Second, even if they had done so, reckless conduct requires a conscious disregard to a substantial and unjustifiable risk. See *State v. Brooks*, 163 Vt. 245, 251, 658 A.2d 22, 26 (1995) (defining recklessness for purposes of criminal penalties); Restatement (Second) of Torts § 500 (1965) (defining recklessness as conduct taken, or not taken when otherwise necessary, despite the actor's knowledge that conduct presents an unreasonable risk of harm to others); cf. *Mellin v. Flood Brook Union Sch. Dist.*, 173 Vt. 202, 220, 790 A.2d 408, 423 (2001) (explaining that gross negligence is a palpable and heedless disregard of one's duty to another). Whether conduct rises to the level of recklessness is a matter for the fact finder unless no reasonable minds could differ on the question. See *Mellin*, 173 Vt. at 220, 790 A.2d at 423 (gross negligence determination is a question of fact). Here, no reasonable person could construe the undisputed facts in this case to show anything but, at most, mere negligence on the part of the trooper. He was traveling at the posted speed limit around nine o'clock in the evening with his lights illuminated, and he saw plaintiffs start to pull over to the right before he attempted to pass their vehicle on the left.[2] Moreover, the trooper reasonably assumed that plaintiffs were heeding their statutory duty to let him pass so that he could get to the scene of the emergency as quickly as possible. Summary judgment was appropriate, therefore, because there was no genuine issue as to recklessness, even if we were to assume that plaintiffs pled recklessness in their complaint; the alleged conduct did not rise to that level.

¶ 16. Finally, because we conclude that 23 V.S.A. § 1015(c) acts as a bar to a suit of negligence, and imposes liability only upon a showing of recklessness, we do not reach the issue of whether the discretionary function exception to the sovereign immunity waiver applies in this case.

*Affirmed.*

---

[2] To the extent that plaintiffs rely on the trooper's failure to use the siren in asserting on appeal that he acted recklessly, the reliance is misplaced. The emergency vehicle statute protects the trooper from negligence suits so long as the cruiser's siren was sounding *or* its flashing lights were operating. 23 V.S.A. § 1015(b). In this case, the trooper turned on the cruiser's flashing lights so he was not obligated to also engage the siren.

¶ 17. **Johnson, J.,** dissenting. I cannot agree that the Legislature intended § 1015(c) of the emergency vehicle statute to deny compensation to innocent bystanders who suffer personal injury or property damage as the result of the negligence of police, fire truck, or ambulance drivers responding to an emergency — but that is the effect of the public policy implemented by the majority opinion. Although the majority quite rightly disagrees, in a footnote, with the State's argument that it is appropriate for emergency responders to take "calculated risks" when driving to the scene of an emergency, it holds that the State cannot be liable for emergency responders doing just that, as the state trooper did here. The trooper was responding to an emergency call and, thus, rather than take precaution when the car ahead of him slowed down, he took the calculated risk that the driver intended to pull over to the right. Instead, the car turned left into a driveway just as the trooper tried to pass.

¶ 18. This is the second case we have had before us recently, with almost identical facts, in which state troopers have crashed into cars ahead of them while on their way to emergencies. In the previous case, which settled before we had a chance to resolve it, see *Tuller v. Armitage*, Docket No. 2002-353, the state trooper, while traveling at a high rate of speed down a residential street, crashed into the plaintiff's vehicle as she attempted to turn left into her driveway. Both vehicles traveled some distance before coming to a stop, with the cruiser ending up on top of the plaintiff's vehicle. The jury awarded the plaintiff nearly $500,000 to compensate her for her permanently disabling injuries. Under the standard adopted by the majority today, it is unlikely that the *Tuller* case would have even reached the jury, and thus the plaintiff would have been without recourse against the presumably negligent actor.

¶ 19. In both instances, only the nature of the troopers' errands took these cases out of the ordinary realm of mistakes by governmental actors. The central issue in these cases is: who should pay — innocent bystanders or negligent emergency responders — when governmental officials, or those authorized by the government to act in an emergency, make a mistake? In a general way, the Legislature has already decided that the State should pay. By enacting the Vermont Tort Claims Act, 12 V.S.A. §§ 5601-5606, the Legislature waived sovereign immunity and permitted suit against the State for the negligence of its employees engaged in ministerial duties within the scope of their employment, at least when a private analog exists. See *Sabia v. State*, 164 Vt. 293, 298, 669 A.2d 1187, 1191 (1995); *Denis Bail Bonds, Inc. v.*

*State,* 159 Vt. 481, 485-86, 622 A.2d 495, 498 (1993). In my view, this Act and our prior common law regarding the duty of emergency vehicle operators — which imposes upon those operators a duty of due care under the circumstances presented — has struck the proper balance between protecting public safety and allowing emergency responders to do their job.

¶ 20. In contrast, the majority's holding effectively immunizes emergency responders — and the governmental agencies that employ them — from liability for their conduct in operating emergency vehicles.[3] Today's decision represents a dramatic shift away from the policy set

---

[3] The majority opinion highlights facts in this particular case that downplay the culpability of the state trooper — the trooper attempted to pass in a passing zone while driving the posted speed limit after observing plaintiffs drift to the right without indicating that they were turning left. Yet, the majority acknowledges that a recklessness standard requires a showing of wilful misconduct — that the actor consciously disregarded a substantial and unjustifiable risk of harm. See *State v. Brooks,* 163 Vt. 245, 251, 658 A.2d 22, 26 (1995) (endorsing Model Penal Code's definition of recklessness).

Similarly, other courts that have adopted a recklessness standard under statutes comparable to § 1015(a) have relied on definitions contained in the Restatement (Second) of Torts § 500 (1965) or Prosser and Keaton on the Law of Torts § 34 (5th ed. 1984) to require plaintiffs to prove that the emergency responder acted with conscious disregard of a risk so great that the harm was highly probable. See *Morris v. Leaf,* 534 N.W.2d 388, 391 (Iowa 1995) (plaintiff must show that emergency responder "has intentionally done an act of an unreasonable character in disregard of a risk known to or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow"); *Turner v. City of Ruleville,* 735 So. 2d 226, 230 (Miss. 1999) ("reckless disregard" encompasses "willful or wanton conduct which requires knowingly and intentionally doing a thing or wrongful act"); *Saarinen v. Kerr,* 644 N.E.2d 988, 991 (N.Y. 1994) ("reckless disregard" requires plaintiff to prove that emergency responder intentionally acted in conscious disregard of obvious risk so great as to make it highly probable that harm would result); *Kuzmics v. Santiago,* 389 A.2d 587, 589 (Pa. Super. Ct. 1978) ("reckless disregard" standard requires plaintiff to prove that emergency responder intentionally acted or failed to act in manner that involves high degree of probability of substantial bodily harm to another person).

This standard will rarely be satisfied in situations involving collisions with emergency vehicles, considering that the emergency responders' operation of their vehicles places their own lives at risk. Indeed, we need look no further than the New York Court of Appeals, whose reasoning the majority adopts today, to see how difficult it is to meet this standard. In *Szczerbiak v. Pilat,* 686 N.E.2d 1346, 1349 (N.Y. 1997), the court applied the reckless disregard standard set forth in *Saarinen* in concluding that a police officer was entitled to judgment as a matter of law despite the plaintiff's evidence that the officer, while responding to a report of a fight, accelerated his cruiser at fifty-five-miles-an-hour or more around drivers in a passing lane on a city street before ever activating his emergency lights or siren and struck and killed a child crossing the street on a bicycle.

forth in our common law and Tort Claims Act, with the result that the mistakes of emergency responders are borne by the unfortunate victims of the emergency response system, rather than by society as a whole — the beneficiary of the system. Nothing in the language of 23 V.S.A. § 1015(c) requires this result. Accordingly, I dissent.

¶ 21. Over sixty years ago, we endorsed the notion "'that a sound public policy requires that public officers and employees shall be held accountable for their negligent acts in the performance of their official duties, to those who suffer injury by reason of their misconduct.'" *Ferraro v. Earle*, 105 Vt. 243, 246, 164 A. 886, 887 (1933) (quoting *Florio v. Jersey City*, 129 A. 470, 472 (N.J. 1925)). In *Ferraro*, a fire truck operator drove through a red light and struck another vehicle in an intersection, injuring a passenger in the other vehicle. This Court was asked to construe a statute providing, in relevant part, that emergency vehicles had the right of way over other vehicles at all times. The Court concluded that although driving the fire truck through the intersection against the light was not negligence as a matter of law, the fire truck operator was not privileged to proceed in disregard of the rights of others. *Id.* at 247, 164 A. at 888; accord *Reid v. Abbiatti*, 113 Vt. 233, 235, 32 A.2d 133, 135 (1943). Rather, according to the Court, the operator's "conduct must be judged by the situation and conditions confronting" the fire truck operator, including the exigency of the occasion. *Id.* at 247-48, 164 A. at 888 ("Due care is care commensurate with the circumstances calling for its exercise."). That is, the operator "was bound to exercise the care of a prudent person, who was driving a fire truck to a fire at the place and under the circumstances here disclosed." *Id.* at 248, 164 A. at 888.

¶ 22. Nothing in our emergency vehicle statute, which was enacted in 1972, alters the flexible negligence standard espoused by this Court in *Ferraro* and recognized by many other courts construing similar statutes. See, e.g., *Tomcsik v. United States*, 720 F. Supp. 588, 592-93 (E.D. Mich. 1989) (conduct of emergency responder should be compared to that of reasonably prudent person discharging duties under like circumstances; existence of emergency is one of several factors that must be reviewed in determining whether officer's actions were reasonable). In relevant part, § 1015 of Title 23 provides as follows:

> (a) The driver of an authorized emergency vehicle, when responding to an emergency call or when responding to, but not returning from, a fire alarm and a law enforcement officer operating an authorized emergency vehicle in fresh pursuit of a suspected violator of the law:

(1) may park or stand contrary to the provisions of this chapter;

(2) may proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation;

(3) shall come to a full stop when approaching a school bus which is flashing red lights and may proceed only when the flashing red lights are extinguished;

(4) may exceed the maximum speed limits;

(5) may disregard regulations governing direction of movement or turning in specified directions.

(b) The exemptions granted to an authorized emergency vehicle apply only when the vehicle is making use of audible or[4] visual signals meeting the requirements of this title.

(c) The foregoing provisions shall not relieve the driver of an authorized emergency vehicle from *the duty to drive with due regard* for the safety of all persons, nor shall such provisions *protect the driver* from *the consequences of his reckless disregard* of the safety of others.

(Emphasis added.)

¶ 23. Without even suggesting that § 1015(c) is ambiguous, the majority construes the provision as requiring plaintiffs who are injured by emergency vehicle operators to prove that the driver acted recklessly in operating the emergency vehicle, thereby overturning our longstanding common law and establishing a significant exception to our Tort Claims Act with respect to state employees. The majority arrives at this holding based on (1) our decision in *Morais v. Yee*, 162 Vt. 366, 648 A.2d 405 (1994), supposedly construing § 1015(c) to require plaintiffs to prove recklessness on the part of emergency responders,

---

[4] Notably, § 11-106 of the Uniform Vehicle Code, from which 23 V.S.A. § 1015 is adopted, requires *both* the audible and visual emergency signals of the emergency vehicle to be operating before the exemptions of the provision will apply. See Unif. Vehicle Code Ann. § 11-106 (1967). Most states have adopted this requirement. See D. Meinecke, *Assessment of Police Conduct During High-Speed Chases in State Tort Liability Cases: The Effects of Fiser v. City of Ann Arbor and Rogers v. City of Detroit*, 46 Wayne L. Rev. 325, 329 n.13 (2000) (citing Michigan and other state statutes). In this case, the officer did not turn on his siren. He testified that he did not want to alert the perpetrator of the suspected assault that he was coming. If the officer had used his siren, the accident may never have happened.

and (2) the "well-reasoned" decision in *Saarinen v. Kerr*, 644 N.E.2d 988 (N.Y. 1994). The majority's reliance is misplaced in both cases.

¶ 24. The issue of whether § 1015(c) requires plaintiffs to show negligence or recklessness on the part of emergency responders was neither raised nor addressed in *Morais*, a case in which the parents of a motorcyclist killed in a high-speed chase sued, among others, the state troopers involved in the chase. If anything, we implied in *Morais* that § 1015(c) required only a showing of negligence by noting that "[o]ther jurisdictions have recognized a duty to conduct high-speed chases with due regard for the safety of all persons under substantially similar statutes." *Morais*, 162 Vt. at 374, 648 A.2d at 410. The majority relies on the fact that we remanded the case for the jury to determine whether the defendants acted with reckless disregard in conducting a high-speed chase. See *id.* at 375, 648 A.2d at 411. Use of this language may reflect the fact that only three individual defendants remained in the case, and that two of those defendants were state troopers, thereby requiring plaintiffs to prove at least gross negligence pursuant to the Tort Claims Act. See 12 V.S.A. § 5602(a)-(b) (exclusive right of action based on conduct of state employees acting within scope of employment is against State, unless claim is that employees acted with gross negligence or willful misconduct). In any event, *Morais* plainly did not address or resolve the issue raised here today.

¶ 25. Regarding the majority's reliance on the reasoning in *Saarinen*, "most courts have interpreted provisions such as [§ 1015(c)] to impose liability for negligence." *City of Amarillo v. Martin*, 971 S.W.2d 426, 429 (Tex. 1998) (citing cases). Moreover, "nearly all" jurisdictions construing the conflicting clauses contained in provisions such as § 1015(c) have concluded that the language is ambiguous and conducted the appropriate statutory interpretation. D. Meinecke, *Assessment of Police Conduct During High-Speed Chases in State Tort Liability Cases: The Effects of Fiser v. City of Ann Arbor and Rogers v. City of Detroit*, 46 Wayne L. Rev. 325, 354 (2000). Nonetheless, without even acknowledging the ambiguity in § 1015(c), the majority adopts the implausible reasoning in *Saarinen* that the Legislature intended the "due regard" clause in § 1015(c) to be a mere "general admonition" to emergency providers to drive safely, while the actual standard to be applied by courts is the "reckless disregard" standard in the second clause; otherwise, so the reasoning goes, the second clause would be mere surplusage. 644 N.E.2d at 991-92; accord *City of Amarillo*, 971 S.W.2d at 430. The irony of this position is that it construes § 1015(c) to prevent the second clause of the provision from

being mere surplusage, but in doing so, makes the first clause mere surplusage.

¶ 26. I find it incredible that the Legislature intended the phrase "duty to drive with due regard" in § 1015(c) to be a meaningless cautionary warning amounting to nothing more than finger wagging, and, at the same time intended the "reckless disregard" language to overrule our longstanding common law and to alter its policy in the Tort Claims Act. See *In re S.B.L.*, 150 Vt. 294, 301-02, 553 A.2d 1078, 1083 (1988) ("A statute can be construed as changing the common law only where that intent is expressed clearly and unambiguously."). In two separate clauses, § 1015(c) explicitly states that emergency responders neither shall be relieved of "the *duty* to drive with due regard" (emphasis added), "nor" shall they be protected "from the consequences" of their reckless disregard for the safety of others. Use of the word "nor" to commence the second clause suggests that both clauses have distinct meanings. Rather than attributing no real meaning to the first clause, as the majority has done, a far more reasonable interpretation of § 1015(c) is that emergency operators are held to a negligence standard of care with respect to civil liability, and further are not protected from criminal liability or convictions for motor vehicle violations for their reckless conduct.

¶ 27. Before 1973, police cars, ambulances, and fire trucks were granted the right of way over other vehicles, 23 V.S.A. § 1033 (1959 version), and were permitted to ignore speed restrictions as long as they operated their vehicles with due regard for the safety of others, 23 V.S.A. § 1143 (1959 version). Notwithstanding these statutory privileges, our case law still required emergency responders to exercise due care. See *Ferraro*, 105 Vt. at 247, 164 A. at 888. In 1972, the Legislature comprehensively revised the statutes governing the operation of motor vehicles. See 1971, No. 258 (Adj. Sess.). Among other things, Act 258 repealed §§ 1033 and 1143 and replaced them with two new provisions for emergency vehicles. See *id.* §§ 1, 3. The right-of-way privilege enjoyed by emergency vehicles under the former § 1033 was codified in 23 V.S.A. § 1050(a), which remains in effect today, obligating all drivers to yield to emergency vehicles. That obligation does not "relieve the operator of an authorized ... vehicle from the duty to drive with due regard for the safety of all persons using the highway," however. See *id.* § 1050(c).

¶ 28. This same policy was reflected in § 1015, which was also part of Act 258. Section 1015 exempts drivers of emergency vehicles from

complying with certain rules of the road, but does not relieve them of the duty to drive with due regard for the safety of others. The majority questions the need for stating a negligence standard in § 1015 if such a standard had already been established by our case law. In my view, § 1015 sets forth a more comprehensive set of guidelines governing the conduct of emergency responders with respect to specific traffic laws. "The effect of the statute is merely to displace the conclusive presumption of negligence that ordinarily arises from the violation of traffic rules," not to "relieve operators of emergency vehicles from their general duty to exercise due care for the safety of others." *Tetro v. Town of Stratford*, 458 A.2d 5, 9 (Conn. 1983); accord *Peak v. Ratliff*, 408 S.E.2d 300, 305 (W. Va. 1991); see also *Tomcsik*, 720 F. Supp. at 592 ("even if excused by the statutes from obeying all of the traffic ordinances, emergency vehicles must be operated with due regard for the safety of others").

¶ 29. As for the "reckless disregard" language, reckless driving was also addressed in other sections of Act 258. The reckless driving statute adopted in Act 258 provided that persons who operated motor vehicles in wanton or willful disregard for the safety of persons or property were subject to fines and imprisonment. See 1971, Act 258 (Adj. Sess.), § 3 (codified at 23 V.S.A. § 1091(b) (1973) (repealed 1996)). Thus, if a driver of an emergency vehicle caused injury to persons or property through the reckless operation of the vehicle, § 1015(c) did not protect the driver from criminal prosecution. Considering § 1015 in the context of related statutes, it is reasonable to conclude that the Legislature intended subsection (c) to maintain a due care standard for civil liability, but to make clear that emergency responders were not protected from criminal liability when they acted recklessly. This construction of the statute fulfills the legislative policy we articulated in *Morais* — that emergency responders must have the ability to act swiftly when answering emergency calls, but may not engage in conduct that threatens public safety. See 162 Vt. at 374, 648 A.2d at 410 (explaining that § 1015(c) embodies policy of balancing law enforcement duties with duty of care to general public). Moreover, unlike the majority's construction of § 1015(c), this interpretation gives real effect to every word in the provision.

¶ 30. If the Legislature had intended § 1015(c) to make emergency responders liable for only their reckless conduct, they certainly knew how to do so, and, I believe, would have done so more clearly. For instance, in 1984, within a law creating emergency medical services districts empowered to contract for ambulance services, see 24 V.S.A.

§§ 2651-2688, the Legislature enacted a provision making volunteer personnel who render emergency medical treatment civilly liable for only their "gross negligence or willful misconduct," 24 V.S.A. § 2687(3). This provision, unlike § 1015(c), unequivocally sets forth a gross negligence or recklessness standard under which those rendering emergency treatment will be held civilly liable. The Legislature could have done the same in § 1015(c), but did not do so.

¶ 31. This Court should ignore the moral issue interjected by *Saarinen* and other courts following the New York court's reasoning — namely, that it is unfair for courts to second-guess split-second decisions that emergency vehicle operators must make when responding to an emergency. In my view, this case presents a liability issue, not a moral one. The question is not whether it is fair to make emergency responders liable for their negligent acts, but rather who should pay when emergency responders make inevitable mistakes — innocent bystanders or the public at large? In other circumstances, our Tort Claims Act requires the public, which benefits generally from governmental services, to pay through the state for the negligent acts of state employees. State employees are individually liable, on the other hand, when they engage in grossly negligent conduct while acting within the scope of their employment. 12 V.S.A. § 5602(a)-(b). Thus, requiring the state to bear the burden of paying for injuries caused by the negligent acts of state employees who are emergency responders would not deter those emergency personnel from acting decisively in responding to emergencies. In short, there is no basis or need to interpret § 1015(c), as the majority has done here, to create an emergency-responder exception to the state's waiver of sovereign immunity.

¶ 32. The fact that not all emergency vehicle operators are state employees does not alter my view. Those emergency responders who are municipal employees — assuming they are not protected by the governmental-proprietary exception to municipal sovereign immunity — will not, as a practical matter, incur financial loss for their negligent acts while performing duties within the scope of their employment. *Morway v. Trombly*, 173 Vt. 266, 271, 789 A.2d 965, 969 (2001) ("As a practical matter, municipalities . . . purchase insurance and defend and indemnify their employees against liability for judgments based on their acts performed within the scope of their municipal duties."); see 29 V.S.A. § 1403 (municipalities waive sovereign immunity to extent of insurance coverage). Similarly, even assuming that the individual employees of private ambulance companies licensed to provide

services within an emergency medical services district created under 24 V.S.A. § 2652 are not state or municipal employees for purposes of civil liability, they will generally not have to bear, personally and individually, the full financial burden for injuries or property damage resulting from their negligent acts performed within the scope of their employment.

¶ 33. Ironically, the majority's narrow interpretation of § 1015 prioritizes emergency response time over general public safety to the extent that, in some instances, it may actually prevent the emergency responder from reaching the emergency. Presumably, in this case and the *Tuller* case recently before this Court, the emergency responders never reached the scene of their respective emergencies. I do not believe that the Legislature intended § 1015(c) to prioritize emergency response time over general public safety, to immunize emergency responders from liability for their negligent acts, or to make innocent bystanders bear the financial burden of those negligent acts. Rather, I believe that the Legislature intended § 1015(c) to maintain the common law flexible negligence standard for emergency responders, but to provide more detailed guidelines concerning the responsibilities of emergency responders with respect to specific traffic laws.

¶ 34. Finally, I believe that the state trooper's conduct in operating his cruiser in response to the domestic assault call was a ministerial rather than a discretionary act on his part, and thus the State was not immune under 12 V.S.A. § 5601(e)(1) (waiver of sovereign immunity does not apply to conduct involving performance or nonperformance of discretionary duty). The purpose of this exception to the state's waiver of sovereign immunity is to assure that the courts do not invade the province of the legislative and executive branches by making judgments about legislative or administrative policy decisions through personal injury law. *Lane v. State*, 174 Vt. 219, 223, 811 A.2d 190, 194 (2002). In this case, the state trooper's decisions on how to handle his cruiser while responding to the emergency is not the kind of policy decision that should be precluded from review within the court system. Cf. *Morway*, 173 Vt. at 273, 789 A.2d at 970 (snowplow operator's decisions regarding speed of his truck and positioning of his plow were ministerial rather than discretionary acts); *Ferraro*, 105 Vt. at 245, 164 A. at 887 (firefighter's operation of fire truck in response to fire was ministerial rather than discretionary act). Because I would hold that neither 23 V.S.A. § 1015(c) nor 12 V.S.A. § 5601(e)(1) precluded plaintiffs' negligence suit, I would reverse the superior court's grant of summary judgment in favor of the State.

¶ 35. I am authorized to state that Chief Justice Allen joins this dissent.