2005 VT 111

**In re Appeal of ELECTRONIC INDUSTRIES ALLIANCE**

[889 A.2d 729]

No. 04-469

¶ 1. October 6, 2005. The Electronic Industries Alliance (EIA), a national trade organization, appeals from a declaratory ruling of the Secretary of Natural Resources, made pursuant to 3 V.S.A. § 808, that Vermont's mercury-added consumer product labeling law, 10 V.S.A. § 6621d, requires labeling of products containing lamps that, in turn, contain mercury. EIA argues that the requirement is inconsistent with the statute and the implementing rules adopted by the Department of Environmental Conservation, and, as a result, imposes a requirement of general applicability for which DEC was required to promulgate a rule. We hold that the Secretary properly interpreted the statute and rules and, as a result, we do not need to reach EIA's second argument. We affirm.

¶ 2. EIA represents manufacturers of computers with liquid crystal display (LCD) computer screens that contain lamps, which, in turn, contain mercury. The dispute here centers around a mandated label that "must clearly inform the purchaser or consumer that mercury is present in the item and that the item may not be disposed of or placed in a waste stream destined for disposal until the mercury is removed and reused, recycled, or otherwise managed to ensure that it does not become part of solid waste or wastewater." 10 V.S.A. § 6621d(a). The labeling requirement helps ensure that "labeled mercury-added consumer products" are not placed in landfills. *Id.* § 6621a(a)(7). EIA argues that only the lamp within the computer screen must be labeled. The Secretary ruled that the label must appear on the computer.

¶ 3. The issue is primarily one of statutory interpretation. The statute prohibits a manufacturer from selling "any of the following items . . . if they contain mercury added during manufacture, unless the item is labeled." *Id.* § 6621d(a). The statute requires the following items to be labeled:

(1) A thermostat or thermometer.
(2) A switch, individually or as part of another product.
(3) A medical or scientific instrument.

(4) An electric relay or other electrical device.

(5) A lamp.

(6) A battery, sold to the public, other than a button battery.

*Id.* Primary responsibility for affixing labels lies with the manufacturer. Each manufacturer required to label must certify annually that it has developed a labeling plan "that complies with this section and any administrative labeling rule adopted by the agency of natural resources." *Id.* "The labeling plan shall include detailed descriptions of the products involved and the label size, material, content, location, and attachment method for each product and for the product packaging, where necessary under the rules, so a label is clearly visible at time of purchase." *Id.* The statute required the Agency to adopt rules to "establish standards for affixing of labels, in compliance with federal law, either to the product or to the package." *Id.* § 6621d(f).

¶ 4. The Agency of Natural Resources adopted rules creating labeling standards for mercury-added consumer products listed in 10 V.S.A. § 6621d(a). Among the standards are that

> (2) A label must be clearly visible and legible to consumers prior to purchase of the product. The label must be located on a surface of the product that is visible during installation and removal.
>
> (3) For labels affixed to products, the required words or symbols must be printed, mounted, molded, or engraved on the surface of the product using materials sufficiently durable to remain legible for the useful life of the product.
>
> (4) For products with enclosed mercury-added switches, both

the enclosed device and the larger product must be labeled.

Vermont Solid Waste Management 6-803(b)(2)-(4), 8 Code of Vermont Rules 12 063 003-58.

¶ 5. EIA bases its argument, almost exclusively, on the treatment of switches in the statute and rules. Unlike the other items in the statute, switches must be labeled "individually, or as part of another product." 10 V.S.A. § 6621d(a)(2). Because the descriptive words are absent from the other items in the statute, EIA argues that the other items do not have to be labeled "as part of another product." Further, according to EIA, the language of Rule 6-803(b) which requires that "both the enclosed device and the larger product ... be labeled" for switches, but omits any such requirement for other items, including lamps, reinforces its argument.

¶ 6. The Secretary rejected EIA's argument because it "would render the statute's purpose virtually meaningless." The Secretary reconciled the language in the statute and the rule by specifying that for switches, labels must be affixed to both the item and the larger product, but for other items a label need only be affixed to the larger product. The Secretary noted that only the manufacturer knows whether or not a product contains mercury and "[i]f consumers do not know about the presence of mercury in their products, they cannot dispose of the products properly." The Secretary also noted that the sentences of the statute requiring a labeling plan and specifying the content of the plan refer to "product" or "products," terms that refer to the thing containing the items specified in the statute. Finally, the Secretary noted that the only way a label can be "visible at the time of purchase," as the statute requires, is if it is placed on the larger product that contains the item that, in turn, contains the mercury.

¶ 7. We construe the statute under a deferential standard of review. Absent a compelling indication of error, we must sustain the construction of a statute by the agency responsible for its execution. See *Laumann v. Dep't of Pub. Safety*, 2004 VT 60, ¶ 7, 177 Vt. 52, 857 A.2d 309. Similarly, we must defer to the agency's interpretation of its rule. *In re S.M.*, 2003 VT 41, ¶ 6, 175 Vt. 524, 824 A.2d 593 (mem.). In interpreting a statute, we give effect to the intent of the Legislature. *Rochon v. State*, 2004 VT 77, ¶ 8, 177 Vt. 144, 862 A.2d 801. To determine whether the Secretary's interpretation of the statute is consistent with the intent of the Legislature, we must look at "the whole statute, its effects and consequences, and the reason and spirit of the law." *Laumann*, 2004 VT 60, ¶ 7. "If the statute's meaning is plain and unambiguous, we enforce the statute as written." *Rochon*, 2004 VT 77, ¶ 8.

¶ 8. We cannot find the meaning of the governing statute, § 6621d, to be plain and unambiguous. If anything, it is the Secretary's interpretation that appears to be most consistent with the apparent intent of the Legislature, particularly the requirement that a label be "clearly visible at the time of purchase." EIA's construction of the statute would make that requirement illusory, except in the case of switches, because no consumer will see a label if it is placed on a product enclosed within another product. Thus, the labeling of five out of six of the items explicitly covered by the statute will be invisible to the consumer unless the consumer buys the item alone, and not as part of a larger product.

¶ 9. Our conclusion is also influenced by the nature of EIA's statutory construction argument. EIA is relying on the statutory construction maxim evinced by the latin phrase "expressio unis est exclusio alterius" — the expression of one thing is the exclusion of the other. Here, EIA takes the statutory language re-quiring the labeling of a switch that is "part of another product" to mean the exclusion of such a labeling requirement for other items, such as lamps, for which no similar language appears in the statute. Statutory construction maxims are aids to construction and not hard rules. See *Caledonian-Record Publ'g Co. v. Walton*, 154 Vt. 15, 25, 573 A.2d 296, 302 (1990). They are "routinely discarded when they do not further a statute's remedial purposes." *Clymer v. Webster*, 156 Vt. 614, 625, 596 A.2d 905, 912 (1991). The maxim on which EIA relies "is relatively weak among rules of statutory construction." *Oxx v. Dep't of Taxes*, 159 Vt. 371, 375, 618 A.2d 1321, 1324 (1992). As we discussed in *Clymer*, the special language applicable to one item in a list may be to emphasize its availability for that item, and not to exclude its availability for other items. *Clymer*, 156 Vt. at 626, 596 A.2d at 912-13. Thus, we held that language that explicitly allows loss-of-companionship damages to parents from the death of a minor child does not exclude the court from awarding such damages for the death of an adult child. *Id.*

¶ 10. Given the relatively weak effect of the maxim on which EIA relies, we cannot conclude that it overrides the deference we must pay to the interpretation of the Secretary, the intent of the Legislature, the words chosen, and the effect of EIA's construction of the statute. We hold, therefore, that the statute requires manufacturers to label products that contain specified items that, in turn, contain mercury. The Secretary properly interpreted the meaning of the statute and the implementing rules.

¶ 11. Because of our disposition of the statutory construction question, we need not reach EIA's contention that the Agency improperly imposed the package-labeling requirement without going through rule-making.

*Affirmed.*