STATE OF VERMONT

ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| In re: Unified Buddhist Church, Inc., | } | |
| Indirect Discharge Permit | } | Docket No. 253-10-06 Vtec |
| (Appeal of Lull's Brook Watershed | } | |
| Association, et al.) | } | |

Entry Order on Motion for Summary Judgment

Appellants Lull's Brook Watershed Association, John Zelig, Amy Zelig, Peter Gordon, Sterling R. Monk, Marion Monk, and Heidi Luquer (Appellants) appealed from a decision of the Agency of Natural Resources to grant renewal Indirect Discharge Permit ID-9-0271 (2006) to Appellee-Applicant Unified Buddhist Church, Inc. (Unified Buddhist). Appellants were represented by David Grayck, Esq. with respect to this motion; the substitution of appearance by Kimberly B. Cheney, Esq. and Austin R. Grey, Esq. was filed with the Court on January 24, 2008. Appellee-Applicant is represented by Hans Huessy, Esq.; the Vermont Agency of Natural Resources (ANR) is represented by Catherine Gjessing, Esq.; and intervenor Vermont Natural Resources Council (VNRC) is represented by Jon Groveman, Esq.

Even in a case such as this one in which the merits of the application are considered de novo, deference is to be given to the interpretation of regulations and to the construction of a statute by the agency responsible for its execution. In re Appeal of Electronic Industries Alliance, 2005 VT 111, ¶7, 179 Vt. 539, 541. The policy justifications for this rule have been described as "agency expertise," and "familiarity with the purpose of the regulation," as well as "the express delegation of legislative authority to promulgate regulations" on the subject. Bacon v. Lascelles, 165 Vt. 214, 218–19 (1996). We therefore give deference to the ANR's interpretation of the statute and of the Indirect Discharge rules, absent "compelling indications of error." In re S.M., 2003 VT 41, ¶6, 175 Vt. 524,

525–26 (citation omitted).

On the other hand, the Vermont Water Quality Standards (VWQS[1]), were promulgated by the former Water Resources Board, not the ANR. They recognize that the ANR will have the primary initial role in their interpretation, but contain the specific provision in Section 1-05 that the "decision-maker in a de novo appeal is not bound by any determinations or interpretations of [the VWQS] made by the [ANR] relative to an application, provided that review of such determinations is within the scope of the appeal."

Moreover, the Vermont Supreme Court has noted, with regard to statutory and regulatory construction, that "[w]hen courts interpret [administrative] rules in conjunction with a statute, they should construe the rules together with the statute to make, if possible, an effective piece of legislation in harmony with common sense and sound reason." In re Green Crow Corp., 2007 VT 137, ¶17 (citation and quotation omitted).

The problem in the present case is created by the circularity of cross-references among the Water Pollution Control statute (in particular, 10 V.S.A. § 1259(e)(4)), the Vermont Water Quality Standards (in particular, §1-04(A)(2)), and the Indirect Discharge Rules (in particular, §14-103(a)(1)). Section 1259(e)(4) of the statute requires an applicant for an indirect discharge of sewage to demonstrate by clear and convincing evidence, that, among other things, "the discharge . . . will not cause a violation of water quality standards."

The parties have not provided the legislative history that would allow the Court to

---

[1] The parties did not provide a complete copy of the Vermont Water Quality Standards. For the purposes of the present analysis, which had to be completed before the commencement of the scheduled trial on January 30, 2008, the Court has referred to a copy of the 2006 VWQS filed in an unrelated case. If any party believes that a different version of the VWQS should have been used and would make a difference in this analysis, that party may provide it and request reconsideration at trial.

determine whether the phrase "water quality standards" as used in 10 V.S.A. § 1259 was contemporaneous with the section of the statute (10 V.S.A. § 1252(e)) requiring the WRB to "adopt standards of water quality to achieve the purposes" of the classification of Vermont surface waters. Section 1252(e) contemplated the adoption of technical water quality criteria, using "numerical values," "biological parameters," and "narrative descriptions" for listed pollutants and "any other water quality parameters deemed necessary" by the WRB. If the two sections were contemporaneous, then the requirement of § 1259(e)(4) that a new indirect discharge "will not cause a violation" of those water quality parameters did not incorporate by reference any policy statements also contained in the Vermont Water Quality Standards later adopted by the WRB. Rather, § 1259(e)(4) should be read as holding indirect discharges to at least the same standard as direct discharges in this respect: that they "not cause a violation" of the required quality of the receiving water.

However, the Vermont Water Quality Standards as later adopted by the WRB under the authority of § 1252(e) contain not only the technical water quality standards governing the quality of the receiving waters, they also contain policies established by the WRB for the ANR's administration of the programs aimed at achieving those water quality standards in the waters of Vermont, including in particular the water pollution control permitting program governing discharges as provided in 10 V.S.A. § 1263.

The title of Chapter 1 of the Vermont Water Quality Standards is "General Policy." Section 1-01 provides definitions of terms, Section 1-02 covers "General Policy," Section 1-03 covers "Anti-Degradation Policy" governing existing discharges and existing high quality waters, and Section 1-04 covers "Discharge Policy" for new discharges, setting out criteria to be met in the process of allowing a new discharge of waste. These policies and criteria are set out to guide the Agency of Natural Resources in administering its water pollution control programs.

3

The criterion set out in §1-04(A)(2) is that:

> There is neither an alternative method of waste disposal, nor an alternative location for waste disposal, that would have a lesser impact on water quality including the quality of groundwater, or if there is such an alternative method or location, it would be clearly unreasonable to require its use.

The ANR requires this so-called 'alternatives analysis' for discharges covered by its water pollution control permitting program,[2] but not for indirect discharges.[3] Appellants argue that even though the alternatives analysis is not required by the Indirect Discharge Rules, the statutory requirement of 10 V.S.A. § 1259(e)(4) that a proposed indirect discharge "will not cause a violation of water quality standards" functions to incorporate the alternatives analysis by reference from VWQS §1-04(A)(2). The ANR takes the position that the Indirect Discharge Rules are more protective of the receiving waters than the direct discharge rules would have been, making a formal alternatives analysis unnecessary. That is, the ANR would require a proposed direct discharge to consider whether an indirect discharge would be a viable alternative, and therefore finds it unnecessary to ask a proposed indirect discharge to consider such alternatives.

In the present case, summary judgment must be denied in any event because the necessary legislative history has not been provided. If the statutory language of 10 V.S.A.

_____

[2] The parties have not provided the regulations pertaining to those permits; it is therefore not possible for the Court to determine whether there is any required level of detail or comprehensiveness for the "alternatives analysis" under that program. Even if some level of alternatives analysis were required by VWQS § 1-04(A)(2) for indirect discharges, nothing that has been brought to the attention of the Court would require any particular level of detail or comprehensiveness for such an analysis.

[3] To the extent that it has been the practice of ANR not to apply VWQS § 1-04(A)(2) to indirect discharges, the ANR is free to state that practice in a written policy or procedure under the Vermont Administrative Procedure Act, but no party has suggested that such action has been requested  3 V.S.A. §831(b).

§§ 1252(e) and 1259 is contemporaneous, and if VWQS §1-04(A)(2) was not in existence at the time of the statute's adoption, it appears to be possible to harmonize the statute and the regulations by examining the specific statutory language. If the phrase "water quality standards" as used in 10 V.S.A. § 1259(e)(4) refers only to the standards the receiving waters must meet, and not to the additional process of alternatives analysis in VWQS §1-04(A)(2), the statute can be harmonized with the regulation. That is, the statute reasonably prohibits indirect discharges from "causing a violation" of the quality standards for the receiving water. On the other hand, an indirect discharge cannot itself "cause a violation" of the process by which the ANR assures itself that no reasonable and preferable alternative methods or locations of waste disposal exist.

This interpretation is reinforced by the use of similar language in 10 V.S.A. § 1263(f), which is the separate statutory requirement for existing indirect discharges. The secretary is directed to grant a permit for existing indirect discharges unless the discharge "violates the water quality standards." This could not have been meant to import the alternatives analysis requirement from the VWQS, as such an existing indirect discharge would already have been in place in its existing location. Rather, reading the Indirect Discharge rules together with the VWQS and the statute as a coherent whole, the purpose of the extensive requirements of the Indirect Discharge rules is to achieve the levels of protection of the receiving waters and of groundwater that are required by the statute and the VWQS. See Indirect Discharge Rules §14-103.

Moreover, even if an alternatives analysis were required for the indirect discharge in this case, it would remain for the trial de novo before this Court whether the alternatives analysis conducted by Appellee-Applicant was sufficient to satisfy VWQS §1-04(A)(2). No remand is required.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that

5

Appellants' Motion for Summary Judgment is DENIED. The trial will proceed as scheduled next week, beginning on January 30, 2008 and continuing as necessary on January 31, 2008 and February 1, 2008. In their post-hearing memoranda, the parties may include any additional legislative history or other argument on the issues raised in the present motion.

In addition, please note that the final decision in the related Act 250 case, Docket No. 191-9-05 Vtec, was issued on January 2, 2008. No judgment order was issued at that time; the parties were asked to consider whether they wish to suspend the issuance of a final judgment order in the case until the conclusion of the present Indirect Discharge Renewal Permit appeal. Unless the parties request that suspension on or before the second day of trial, January 31, 2008, the final judgment order in the Act 250 case will be issued by the Court effective at 4:00 p.m. on January 31, 2008.

Done at Berlin, Vermont, this 25th day of January, 2008.

_____
Merideth Wright
Environmental Judge