STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT<br>Vermont Unit | ENVIRONMENTAL DIVISION<br>Docket No. 131-8-14 Vtec |
| Vt. Turquoise Hospitality, LLC Discharge<br>Permit Application (Permit # ID-9-0313) | DECISION ON MOTION |

Applicant Vermont Turquoise Hospitality, LLC ("Applicant") seeks an Indirect Discharge Permit for the collection, treatment, and discharge of domestic wastewater from the Aeolus Mountain Spa, proposed at 5940 Main Street in the Town of Manchester, Vermont. Applicant submitted an Indirect Discharge Permit application to the Vermont Agency of Natural Resources Department of Environmental Conservation ("DEC"), which the DEC approved on August 6, 2014. Neighboring landowner Richard Smith ("Appellant") timely appealed that approval to this Court and filed a 13-question Statement of Questions presenting issues generally related to the effect of the discharge of treated domestic wastewater on the water quality of the West Branch of the Batten Kill under the Vermont Water Quality Standards ("WQS"), Interim Anti-Degradation Implementation Procedure (the "Interim Procedure"), Indirect Discharge Rules, and Water Supply and Wastewater Disposal Rules. Applicant now moves for summary judgment in its favor on Questions 1 through 11, arguing that it is entitled to a judgment as a matter of law. The Vermont Agency of Natural Resources ("ANR") filed a memorandum in support of Applicant's motion for summary judgment.

Applicant is represented by Christopher Roy, Esq. Appellant is represented by Paul Gillies, Esq. ANR is represented by Leslie A. Weltz, Esq.

**Factual Background**

For the sole purpose of putting the pending motion into context, the Court recites the following facts which it understands to be undisputed:

1. Applicant Vermont Turquoise sought an Indirect Discharge Permit for the collection, treatment, and discharge of domestic wastewater from the Aeolus Mountain Spa, an 80-room

resort hotel, 160-seat restaurant, and spa proposed at 5940 Main Street in the Town of Manchester, Vermont.

2. DEC approved the application, issuing Permit #ID-9-0313 ("Permit") on August 6, 2014.

3. The Permit authorizes the discharge of 19,998 gallons per day ("gpd") of domestic wastewater from a dual alternating leachfield system to the groundwater. The receiving groundwater ultimately and indirectly flows into the West Branch of the Batten Kill River.

4. The disposal fields will be located approximately 800 feet from the West Branch; Vermont Route 7A and other several other developments are located on these intervening lands.

5. On June 12, 1991, the former Vermont Water Resources Board ("Water Board") designated "all portions of the main stem of the Batten Kill and the West Branch of the Batten Kill and West Branch" as Outstanding Resource Waters. In Re Battenkill Findings of Fact, Conclusions of Law and Order, Docket No. 89-02 (Water Res. Bd. June 12, 1991).

6. The West Branch of the Batten Kill potentially affected by the Permit is within the range designated as Outstanding Resource Waters.

7. Appellant appealed the Permit on August 27, 2014.

## Discussion

Applicant moves for summary judgment on Questions 1 through 11 of Appellant's Statement of Questions pursuant to Rule 56 of the Vermont Rules of Civil Procedure, asking this Court to conclude that no material facts that are relevant to the legal issues presented in this appeal are in dispute and that Applicant is entitled to judgment as a matter of law. Although Applicant's motion seeks summary judgment on eleven separate Questions, we have determined each of the challenged Questions to be a variation on a single legal issue: whether the issuance of an indirect discharge permit for the Project is prohibited because the West Branch of the Batten Kill has been designated as an Outstanding Resource Water. In response, Appellant alleges a dispute as to material facts and therefore asks the Court to deny Applicant's motion for summary judgment.

## I.    Summary Judgment Standard

The Court will grant summary judgment to a moving party upon a showing that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  V.R.C.P. 56(a).  What facts are material in any case is determined by the legal issues properly raised in the pending litigation.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").   Stated differently, an alleged fact may be substantive (for example waters deemed to be Outstanding Resource Waters), but such an allegation may only be deemed material if it is pertinent to the legal issues presented. Id.

We must "accept as true the [factual] allegations made in opposition to the motion for summary judgment" and give the non-moving party the benefit of all reasonable doubts and inferences.  Robertson v. Mylan Labs., Inc., 2004 VT 15, ¶ 15, 176 Vt. 356 (internal citation omitted); see V.R.C.P. 56(c) (laying out summary judgment procedures).  If the responding party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court may "consider the fact undisputed for purposes of the motion." V.R.C.P. 56(e)(2).  The Court "need consider only the materials cited in the required statements of fact, but it may consider other materials in the record."  V.R.C.P. 56(c)(3).  With these procedural directives in mind, we begin our review of Appellant's challenged Questions.

## II.    Appellant's Questions 1-11

Applicant now seeks summary judgment in their favor on 11 of Appellant's 13 Questions; each of the challenged Questions asks a variation of whether the ANR's Interim Anti-Degradation Procedure prohibits the issuance of an indirect discharge permit to Applicant. Appellant's concerns focus on the possibility that treated wastewater[1] may be indirectly discharged into the West Branch of the Batten Kill, a portion of which has been designated as an Outstanding Resource Water by the former Water Board, including the area potentially

---

[1]  Implicit in Appellant's concerns is an assumption that the treated wastewater is somehow not fully treated and is distinguishable from the groundwater that it becomes, particularly after passing through all proposed treatment systems and the sand, gravel, rock and other earthen materials between Applicant's proposed project and the 800-foot distance to the banks of the Batten Kill.

affected by the Permit.  In Re: Batten Kill ORW Designation, Findings of Fact, Conclusions of Law and Order, Docket No. 89-02 (1991).[2]

Federal regulations require states to develop, adopt, and identify methods for implementing an anti-degradation policy.  Clean Water Act, 40 CFR 131.12.  Vermont's anti-degradation policy was adopted under the authority of 10 V.S.A. Chapter 47 and is set forth in § 1-03 of the Vermont Water Quality Standards ("WQS").  Vermont Water Quality Standards § 1-03, Code of Vt. Rules 12 030 025, available at http://www.lexisnexis.com/hottopics /codeofvtrules (hereinafter WQS)

It is the primary goal of the anti-degradation policy to maintain and protect the state's water quality and existing and designated uses.  Vermont Agency of Natural Resources Department of Environmental Conservation Interim Anti-Degradation Procedure ("Interim Procedure"), § I(A) (filed as Exhibit 1 to Applicant's Mot. for Summ. J.).  To this end, the Anti-Degradation Policy establishes three tiers for protecting water, described as existing uses ("Tier 1"), high quality waters ("Tier 2"), and Outstanding Resource Waters ("Tier 3").  WQS § 1-03. Under Tier 1, certain factors must be considered in determining the uses of water to be protected and maintained; Tier 2 provides for additional review in order to prevent reduction in the high quality of the water; Tier 3 waters must be designated as such by the Secretary pursuant to 10 V.S.A. § 1424a, and the existing water quality for designated Tier 3 waters must be maintained.  Id.  In October 2010, ANR adopted the Interim Anti-Degradation Implementation Procedure to implement the anti-degradation policy in § 1-03 of the WQS, including protection of Tier 3 Outstanding Resources Waters.

Although the Interim Anti-Degradation Implementation Procedure applies to applications for new direct discharges, applications for new indirect discharge permits are explicitly exempt if the proposed system is subject to ANR's Indirect Discharge Program, as implemented by the Indirect Discharge Rules.[3]  Interim Anti-Degradation Implementation Procedure, §§ III(B)(2), III(C)(4).  Compliance with 10 V.S.A. Chapter 47 requires that an

---

[2] We are directed to provide "[p]rior decisions of the . . . Water Resources Board . . . the same weight and consideration as prior decisions" of this Court.  10 V.S.A. § 8504(m).

[3]  Direct discharges include discharges of stormwater from culverts or drainage pipes directly into streams and other waters of the State; indirect discharges are not direct; such waters flow into groundwater, once treated, and all that ground water may ultimately flow (indirectly) into State waters

approved discharge be permitted under the Indirect Discharge Rules. Pursuant to the Indirect Discharge Rules, all new indirect discharges of wastes over 6,500 gpd are subject to review under the Indirect Discharge Program. Indirect Discharge Rules § 14-101(a), Code of Vt. Rules 12 033 003. New indirect discharges below 6,500 gpd, however, are not subject to review under the Indirect Discharge Program. Id.

Implicit in this procedural structure is that oversight for large indirect discharges includes more rigorous oversight and that further oversight via the Interim Anti-Degradation Implementation Procedure provides no further protections and is therefore not applicable to permitted indirect discharges. ANR followed this procedure during its review of Applicant's wastewater treatment system.

In interpreting and applying administrative rules or regulations, the Court follows the same approach as with statutory interpretation. In re Williston Inn Group, 2008 VT 47, ¶ 14, 183 Vt. 621 (citing Conservation Law Found. v. Burke 162 Vt. 115, 121 (1993)). The Court will "reference to the plain meaning of the regulatory language" in order to "discern the intent of the drafters." Id. (citing Slocum v. Dep't of Soc. Welfare, 154 Vt. 474, 478 (1990)). Although the Court is not bound by ANR's determinations or interpretations of the WQS in relation to a specific application, "deference is to be given to the interpretation of regulations and to the construction of a statute by the agency responsible for its execution." In re Unified Buddhist Church, Inc., No. 253-10-06 Vtec, slip op. at 3 (Vt. Envtl. Ct. Jan. 25, 2008) (Wright, J.) (citing In re Electronic Indus. Alliance, 2005 VT 111, ¶ 7, 179 Vt. 539; see also WQS § 1-05 (stating that in a de novo appeal from an ANR decision, the Court "is not bound by any determinations or interpretations of these rules made by the Secretary relative to an application, provided that review of such determinations is within the scope of the appeal").

Applicant applied for and received an indirect discharge permit, Permit #ID-9-0313, on August 6, 2014 for the discharge of 19,998 gpd of domestic wastewater. The proposed system will treat the discharged wastewater before it flows into the proposed alternating leachfields, where it is then treated further before indirectly discharging into the surrounding groundwater. To reach the West Branch of the Batten Kill, the combined groundwater will then be filtered through soil, gravel and rocks during the 800-foot stretch between the proposed leachfields

and the banks of the West Branch. Appellant Smith disputes none of Applicant's factual representations in this regard.

The Court understands Appellant's Questions 1–11 to raise concerns with Applicant's proposed indirect discharge under ANR's Anti-Degradation Policy, at WQS § 1-03, as implemented in the Interim Anti-Degradation Procedure. Applicant argues that they are entitled to summary judgment on these Questions because the Interim Anti-Degradation Procedure specifically exempts applications for indirect discharges that require an indirect discharge permit.

Based on the plain language of the Indirect Discharge Rules, new indirect discharges greater than 6,500 gpd are subject to the indirect discharge program and require a permit. Additionally, as noted above, based on the plain language of the Interim Anti-Degradation Procedure, indirect discharges that require an indirect discharge permit are exempt from the requirements of the Interim Anti-Degradation Procedure and therefore WQS § 1-03. Thus, because permit review is required for Applicant's indirect discharges, the proposed wastewater treatment system is not subject to the duplicative review of the Interim Anti-Degradation Procedure under Section III(C)(4).

Because the Indirect Discharge Rules exempt the proposed system from review under the Interim Anti-Degradation Procedure and independent review because of the West Branch's designation as an Outstanding Resource Water, Applicant is entitled to summary judgment as a matter of law as to Appellant's Questions regarding either the Interim Anti-Degradation Procedure or Outstanding Resource Waters. Therefore, Applicant's motion for summary judgment as to Questions 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, and 11 is **GRANTED**.

## Conclusion

The Court understands that by his Questions 1 through 11, Appellant seeks to challenge Applicant's proposed indirect discharge of 19,998 gpd of domestic wastewater, pursuant to the Interim Anti-Degradation Procedure's protection of Outstanding Resource Waters. It is the Indirect Discharge Rules and standards for considering an indirect discharge permit that govern the pending application and not the Anti-Degradation Policy or Interim Anti-Degradation Procedure. For the reasons stated above, we **GRANT** summary judgment in Applicant's favor

6

on Questions 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, and 11 of their Statement of Questions.  Questions 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, and 11 are, therefore, **DISMISSED**; Questions 12 and 13, related to design flow calculations, remain to be resolved at trial.  This appeal remains scheduled for a trial that will begin on July 14, 2015.

Electronically signed on June 24, 2015 at Newfane, Vermont, pursuant to V.R.E.F. 7(d).

_____
Thomas S. Durkin, Judge
Environmental Division