Celeste **SELLERS** and Richard K. Sellers, **Individually and as Administrators of the Estate of Joshua David Sellers, Deceased, Appellants**

v.

**TOWNSHIP OF ABINGTON and Abington Township Police Department.**

Commonwealth Court of Pennsylvania.

Argued Dec. 12, 2012.

Decided June 5, 2013.

Selah Wyche, Jenkintown, for appellants.

Charles W. Craven, Philadelphia, for appellee Township of Abington.

BEFORE: PELLEGRINI, President Judge, and LEADBETTER, Judge, and SIMPSON, Judge, and LEAVITT, Judge, and BROBSON, Judge.

OPINION BY Judge LEADBETTER.

Celeste Sellers and Richard K. Sellers, individually and as administrators of the estate of Joshua David Sellers, decedent (Appellants), appeal from the order of the Court of Common Pleas of Montgomery County, which granted the Motion for Summary Judgment of Abington Township, Officer Edward Howley, and Lieutenant Karl Knott (collectively Appellees) and dismissed Appellants' action with prejudice. For the reasons that follow, we affirm.

The following is a summary of the evidence of record. On the evening of December 23, 2006, Scott Simons (Simons), Matthew Senger (Senger), and Joshua Sellers (decedent), met at the house of a mutual friend in the area of Jenkintown Road, Abington Township. Deposition of Scott Simons (Simons Dep.) at 33; Reproduced Record (R.R.) at 477a and Deposition of Matthew Senger (Senger Dep.) at 16; R.R. at 508a. Simons testified that they were getting together one last time before their friends who lived at the house were evicted as a result of an incident at the residence in November 2006.[1] Simons

---

1. According to Simons, on one evening in or around early November 2006, Abington Po-

admitted that he had been drinking all day, first at his aunt's home and then at his father's apartment, but that he did not drink at the Jenkintown Road residence because they had no beer or alcohol.[2] Senger, however, testified that he drank beer while at the Jenkintown Road residence and that both Simons and decedent also drank beer while there. Senger Dep. at 16–17; R.R. at 508a–509a.

At some point in the early morning hours of December 24, 2006, both Senger and decedent asked Simons for a ride home. Simons agreed to drive Senger home because Senger lived only a few doors away from his apartment, and it was agreed that decedent would sleep at Simons' apartment, since decedent lived too far away. Simons Dep. at 40; R.R. at 479a; Senger Dep. at 18; R.R. at 510a. Simons testified this was not the first time he had gotten behind the wheel of his car and drove drunk with his friends following a night out drinking.[3] Simons Dep. at 39–40; R.R. at 479a. Senger was in the front passenger seat and decedent climbed into the back rear passenger seat. Simons stated that he did not fasten his seatbelt and that neither Senger nor decedent fastened their seatbelts either. Id. at 44; R.R. at 480a.

Simons testified that he was driving west on Jenkintown Road at between 40 and 45 mph in a 30 mph zone when he saw a police car approach going east and pass him.[4] Simons saw the police vehicle's

---

lice came to the house following up on reports of either the presence of a 16–year–old female drinking alcohol at the house or reports of 15 people fighting out front with weapons. After an unknown police officer attempted to gain access to the residence but was denied, Simons, who was present inside, said an officer called him on his cell phone for permission to enter the residence. Simons refused to grant permission for the police to enter telling them he was only a guest. The police then rammed down the front door, ran in and kicked open all the doors. Simons stated that one individual was restrained by the police and that he heard that another individual, Ed O'Neil, was kicked in the face by one of the officers. Finally, Simons stated that he was told that the next day, someone from the Abington Police Department went to the residence and negotiated an agreement with the individuals who resided there and that they signed a waiver of liability in exchange for the police department's promise to pay for the cost and repair of any damage to the house. No convictions resulted from this incident. Officer Howley was not present at the Jenkintown residence that night. Simons Dep. at 71–75; R.R. at 487a–488a; Howley Dep. at 69; R.R. at 192a.

2. Simons estimated that he drank roughly six beers and had six shots of either Jack Daniels or Jim Beam whiskey between 12 and 1 p.m., when he arrived at his aunt's home, and 6 p.m. that night. Simons Dep. at 29–30; R.R. at 476a–477a. He also admitted having one beer at his dad's apartment, and that he had taken prescription pain medication while at his aunt's home. Id. at 30, 42; R.R. 477a, 480a.

3. Simons admitted that, "[h]onestly, I drove drunk a lot more than that night so, you know—I drove home from bars. I drive home [drunk] from all over the place." Id.

4. The car Simons was driving was a red 1990 Mustang GT previously owned by Ed O'Neil. Simons had put a lot of work into the car, including modifications that allowed the car to reach a high rate of speed very quickly. Simons' friend and brother of Ed O'Neil, Dan O'Neil Jr., owned a similar car, a red 1985 Mustang GT. O'Neil Jr. was known for his speeding and reckless driving by his neighbors and some members of the Abington Police Department, according to Officer Howley, who himself once pulled over O'Neil Jr. for speeding and careless driving. Simons' red Mustang was parked outside of the Jenkintown residence the night the police responded to the disturbance calls, but Officer Howley was not one of the responding officers. Simons Dep. at 58–60; R.R. at 484a; Howley Dep. at 69, 74, 77; R.R. at 192a, 193a, 194a. In addition, Simons testified that he had no prior encounters with Officer Howley, which Officer Howley confirmed. Simons Dep. at 17, 65; R.R. at 473a, 485a; Howley Dep. at 71; R.R. at 192a.

lights activate and in his rearview mirror he saw the vehicle make a U-turn in a parking lot and proceed to follow him westbound on Jenkintown Avenue. *Id.* at 18–19, 26, 44–45; R.R. at 474a, 476a, and 480a. Simons admitted that at that point, instead of pulling over, he floored it, because he was "[s]cared of getting a DUI." *Id.* at 18; R.R. at 474a.[5] Senger testified that when Simons floored it, he was shoved back into his seat, and at the time, he did not know why Simons floored it, because he (Senger) did not see any police vehicle. Senger estimated Simons' speed at "[w]ell over a hundred" as they "flew down Jenkintown Road" before turning right onto Garfield and up to his house. *Id.* at 29, 34; R.R. at 521a, 526a. Senger explained that as he was saying good bye and trying to get out, Simons said something that made him look behind him, where he saw the reflection of police lights on the houses. Senger stated that Simons "floored it again" and he remembered "flying down the street, and ... [Simons] shutting his lights off...." *Id.* at 29, 31; R.R. at 521a, 523a. Senger testified he asked Simons to slow down and that he smacked or backhanded Simons to get his attention, and that decedent asked Simons to pull over, but Simons did not respond to either of them. *Id.* at 32–33; R.R. at 524a–525a.

As Simons continued fleeing on Garfield Avenue, he approached the T-intersection of Garfield and Meyer Avenue, where the road dips slightly. Simons testified that as he accelerated the mustang, he hit the "big dip [in the road] and the car, she got

airborne, and I remember the car coming down and hitting...." Simons Dep. at 47; R.R. at 481a. The vehicle ultimately crashed into trees and a parked pickup truck on the property located at 2943 Meyer Avenue. Simons and Senger were injured in the crash, while decedent was ejected from the car upon impact and thrown twenty feet. All three men were transported to Abington Hospital, where decedent subsequently died from his injuries. Simons Dep. at 49, 54; R.R. at 481a, 483a; Senger Dep. at 36; R.R. at 528a.

Officer Howley testified by deposition [6] that on the night in question, he was on routine patrol in his police vehicle traveling westbound on Jenkintown Avenue, when he heard the exhaust mode "wide open and loud," and saw the taillights of a vehicle far in the distance proceeding in the same westbound direction. Howley Dep. at 88; R.R. at 196a. Officer Howley "attempt[ed] to gain ground safely on that vehicle to initiate a traffic stop" and that when he himself accelerated beyond the posted speed limit of thirty-five mph, he activated the lights and sirens on his police vehicle. *Id.* at 94; R.R. at 198a. As soon as he activated his light-bar, the in-car camera system automatically began to record. *Id.* at 39; R.R. at 184a.[7]

As Officer Howley proceeded to follow the vehicle, he reported on his radio that the vehicle had turned north on Penn Avenue, then later corrected that transmission to north on Garfield Avenue. Officer Howley testified that he was unable to

---

**5.** Simons admitted he had a DUI conviction in either 1998 or 1999. Simons Dep. at 24–25; R.R. at 475a.

**6.** Certain references to Officer Howley's testimony relate to the video of the incident which was recorded on the in-car camera system in his patrol vehicle which Officer Howley viewed and was questioned about during his deposition.

**7.** Both Officer Howley and Lieutenant Knott explained that once the light bar is activated, the in-car camera system begins recording, but it is programmed to preserve approximately 30 to 45 seconds prior to the light bar's activation. Howley Dep. at 144–145; R.R. at 210a–211 a; Knott Dep. at 37–39, 97; R.R. at 311 a–313a, 372a.

identify the color or make of the vehicle until it turned right off of Jenkintown Road, and at that point, he was "relatively certain that it was a red Mustang." *Id.* at 104; R.R. at 200a. Officer Howley then transmitted the information that the vehicle was traveling at a high rate of speed and he believed the driver was driving under the influence. *Id.* at 227; R.R. at 231a. Officer Howley, who was then traveling north on Garfield, reported that he believed the speeding vehicle had "blacked out," or turned off his lights and he had lost the vehicle. *Id.* at 140; R.R. at 209a. Officer Howley testified that after the vehicle eluded him at Jenkintown and Garfield, he continued to proceed in the same direction and because he knew from patrolling the area that a red Mustang was frequently at a house on Jefferson Avenue, he headed to that location.[8] *Id.* at 156; R.R. at 213a. When Officer Howley arrived on Jefferson Avenue, he testified he did not see the vehicle he had been pursuing and that at that point, he turned his sirens off. *Id.* at 228, 232; R.R. at 231a, 232a. Officer Howley then reported that he was going to go back towards Meyer Avenue and proceeded to turn around. Officer Howley testified that at this point, he heard a report from police dispatch that a car had hit a house on Meyer Avenue and that he immediately went to the scene. *Id.* at 235; R.R. at 233a. Officer Howley then pointed his vehicle's spotlight onto the crashed vehicle and requested expedited EMS to the scene. *Id.* at 237; R.R. 234a.

Appellants filed a wrongful death and survival action against Appellees, asserting claims for negligence as well as punitive damages against Abington Township, Officer Howley, and Lieutenant Knott.[9] Appellants alleged that Appellees negligently, recklessly, and willfully initiated and failed to terminate a high speed pursuit of the vehicle being operated by Simons, causing the death of decedent Sellers who was an innocent bystander. After discovery was completed, Appellees filed a motion for summary judgment which was granted by the trial court following oral argument. This appeal followed.

■ In considering a motion for summary judgment, we must examine the evidence of record in a light most favorable to the non-moving party, accepting as true all well-pled facts and reasonable inferences to be drawn from those facts. *Kuniskas v. Pa. State Police*, 977 A.2d 602, 604 n. 3 (Pa.Cmwlth.2009). Summary judgment is proper where there are no genuine issues of material fact as to a necessary element of a cause of action. *Wenger v. W. Pennsboro Twp.*, 868 A.2d 638, 641 (Pa.Cmwlth. 2005). Where the non-moving party fails to adduce sufficient evidence on an issue which is not only essential to its case but on which it bears the burden of proof such that a jury could return a verdict in its favor, the moving party is entitled to judgment as a matter of law. *Young v. Dep't*

---

8. Officer Howley explained that he was aware of only one red Mustang in that area, owned by Dan O'Neil Jr., and that it was frequently parked outside of the senior O'Neil's residence on Jefferson Avenue. *Id.* at 75; R.R. at 193a.

9. Appellants' original complaint was filed against Abington Township Police Department and Abington Township only. The trial court sustained in part and overruled in part the defendants' preliminary objections and dismissed Abington Township Police Department from the case. Thereafter, Appellants filed an amended complaint naming Officer Howley and Lieutenant Knott as parties to the action. The court sustained in part defendants' preliminary objections to the amended complaint, and dismissed the punitive damages claims against Abington Township. Trial Court's Opinion of May 5, 2011, at 1–2.

*of Transp.,* 560 Pa. 373, 376, 744 A.2d 1276, 1277 (2000). A jury "can not be allowed to reach a verdict merely on the basis of speculation and conjecture." *Id.* With these principles in mind, we turn now to the matter before this court. As these questions implicate issues of law, our review is plenary.

Appellants argue that the trial court erred in granting summary judgment in favor of Appellees when genuine issues of material fact exist as to: 1) whether Appellees owed a duty of care to decedent, an innocent bystander; 2) whether Appellees' actions in initiating and continuing the pursuit of Simons were a substantial factor contributing to decedent's death; and 3) whether the conscious and/or reckless disregard of the dangers of the high-speed pursuit by Appellees rose to the level of intentional misconduct such that punitive damages are warranted.

■ First, Appellants argue that like the plaintiffs in *Jones v. Chieffo,* 549 Pa. 46, 700 A.2d 417 (1997), and *Aiken v. Borough of Blawnox,* 747 A.2d 1282 (Pa. Cmwlth.2000), decedent Sellers was an innocent bystander to whom Officer Howley and Lieutenant Knott owed a duty of care. Appellants insist that there was no evidence that decedent was fleeing apprehension or attempting to aid the fleeing driver (Simons), and therefore the trial court erred in relying on *Lindstrom v. City of Corry,* 563 Pa. 579, 763 A.2d 394 (2000) and *Ferguson v. Commonwealth,* 2009 WL 723426 (W.D.Pa. No. Civil Action 05–280E, filed March 13, 2009), in which it was determined that neither the fleeing driver (*Lindstrom*) nor a passenger in the fleeing vehicle (*Ferguson*) was owed a duty of care by law enforcement officers who pursued them. Appellants strenuously assert that unlike in those cases, there was evidence that decedent urged Simons to pull over prior to the fatal crash and that,

therefore, the trial court erred in determining that decedent was akin to the fleeing suspect to whom no duty was owed. Appellants further assert that Officer Howley negligently initiated his pursuit of Simons' vehicle for the purpose of harassing a driver whom he believed to be Dan O'Neil Jr., under the pretext that he had committed a relatively minor traffic offense—speeding, and that Lieutenant Knott negligently failed to terminate the pursuit once it became obvious that it was "fruitless" and that "Howley would not be capable of catching the vehicle." Appellants' Brief at 13. Appellants argue that it was the actions of Officer Howley in initiating the pursuit and continuing it, without evidence that Simons was driving while intoxicated or doing anything other than speeding, which caused Simons to flee and crash.

Appellees counter that Officer Howley owed no duty of care to decedent Sellers, "a willing but unknown occupant of a speeding and fleeing motor vehicle," and that both Officer Howley's and Lieutenant Knott's actions were reasonable under the circumstances. Appellees' Brief at 13. Appellees also argue that the emergency vehicle doctrine in Section 3105 of the Vehicle Code, *as amended,* 75 Pa.C.S. § 3105, does not create a statutory duty of care on the part of the pursuing police toward those who flee apprehension, citing *Frazier v. Pennsylvania State Police,* 845 A.2d 253 (Pa.Cmwlth.2004). Appellees argue that it is the clear intent of the legislature to insulate the police from liability where a person is injured while "in flight or fleeing apprehension or resisting arrest by a police officer or knowingly aided a group, one or more of whose members were in flight of fleeing apprehension or resisting arrest by a police officer." Section 8542(b)(1) of the Judicial Code, 42 Pa.C.S. § 8542(b)(1). Finally, Appellees

contend that many of the facts which Appellants insist are genuine issues of material fact, such as their theory that Officer Howley and Lieutenant Knott pursued Simons under the guise of a vendetta against the O'Neil family, are purely speculative and conjecture only. Because Appellants were unable to establish, as a threshold matter, that Officer Howley owed a duty of care to decedent Sellers, Appellees cannot be held liable for the accident caused by the intoxicated Simons' high speed driving.

■ Section 8541 of the Judicial Code, 42 Pa.C.S. § 8541, provides:

Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person.

There are however, several exceptions to this grant of immunity, which allows an injured party to recover in tort from a local agency provided that: (1) the damages would be otherwise recoverable under common law or statute creating a cause of action if the injury were caused by a person not having available a defense under Section 8541; (2) the injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his official duties; and (3) the negligent act of the local agency falls within one or more of the eight enumerated categories of exceptions to immunity found in subsection (b). 42 Pa.C.S. § 8542(a)(1) and (2). This court is constrained to narrowly construe this provision and all other provisions of this Act since the legislature has expressed a clear intent to insulate political subdivisions from tort liability. *Lindstrom,* 563 Pa. at 584, 763 A.2d at 397; *Love v. City of Philadelphia,* 518 Pa. 370, 374, 543 A.2d 531, 532 (1988).

■ We must initially determine whether Appellants have met the threshold requirement of establishing that Officer Howley and Lieutenant Knott owed a duty of care to Appellants' decedent, Sellers. The primary element in any negligence cause of action is that "the defendant owes a duty of care to the plaintiff." *Althaus v. Cohen,* 562 Pa. 547, 552, 756 A.2d 1166, 1168 (2000). Noting that the "legal concept of duty of care is necessarily rooted in often amorphous public policy considerations, which may include our perception of history, morals, justice and society[,]" the court delineated several "discrete" factors which must be weighed in order to determine if such a duty exists: (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution. *Id.* at 553, 756 A.2d at 1169.

In *Lindstrom,* our Supreme Court applied those factors in order to determine whether to impose a duty of care upon the City of Corry and its agent, Police Officer Beebe, after Officer Beebe attempted to pull over plaintiffs' son, who ignored the officer's flashing lights and fled. During the high speed pursuit, the son lost control of his vehicle, hit several curbs and a tree and flipped over, and subsequently died from his injuries. In analyzing these factors, the court stated:

As to the first factor, regarding the relationship between the parties, a law enforcement officer is a protector of all members of the public. The officer's relationship to the fleeing suspect must be viewed in light of the broader relationship to the safety of the community he or she serves. A ny duty of protection the officer has is lessened as soon as the driver flees rather than complying with a request to stop. The second

factor weighs against imposing a duty, as the social utility of a police officer's attempt to apprehend a person suspected of violating the law is beyond dispute. Turning to the third factor, it is evident that there is a risk of injury to the fleeing driver, and it is foreseeable that drivers who refuse to pull over when alerted to do so may be injured in their attempt to elude an officer. Fourth, the consequences of imposing a duty upon officers are burdensome, as that may prevent the apprehension of dangerous criminals and further encourage flight. Finally, the public has a preeminent interest in ensuring that roadways remain safe from dangerous drivers and criminals and that police officers are empowered to enforce the law.

*Lindstrom*, 563 Pa. at 585, 763 A.2d at 397. The court therefore concluded that no duty of care was owed by the police officers to the fleeing suspect.

■ Thus, there is no question that officers in this situation owe no duty of care to the wrongdoers they pursue, *Lindstrom*, 563 Pa. at 586, 763 A.2d at 398 n. 3 (2000), but owe a duty of care only to innocent third parties, *Jones v. Chieffo*, 549 Pa. at 52, 700 A.2d at 420 (1997). To date, however, the innocent third parties to whom a duty of care is owed were found to have been bystanders unconnected with the wrongdoer or the vehicle being pursued. *Jones; Aiken*. We believe that to extend this duty to unknown passengers (such as decedent) in the fleeing vehicle would be contrary to the analysis of factors set out by our Supreme Court in *Lindstrom*. While we have not addressed this issue directly, other recent cases, as well as the analysis in *Lindstrom*, support this conclusion.

In *Kuniskas v. Pennsylvania State Police*, 977 A.2d 602 (Pa.Cmwlth.2009), plaintiff Kuniskas was operating an ATV on a state road when Corporal Walsh of the Pennsylvania State Police attempted to apprehend him for traffic violations. Similar to Simons' actions herein, Kuniskas turned and fled, figuring he was not allowed on the road and fearing that the vehicle would be impounded. Kuniskas argued that the trooper "engaged in reckless and dangerous behavior by repeatedly and purposefully ramming the ATV" while pursuing him, which ultimately caused him to lose control and flip over. *Id.* at 604. The trial court granted summary judgment in favor of the State Police, relying on *Frazier v. Pennsylvania State Police*, 845 A.2d 253 (Pa.Cmwlth.2004). Kuniskas argued that *Frazier* was distinguishable because it involved a fleeing motorist involved in a high speed chase with police in which the fleeing motorist later collided with a tree and was killed, whereas "here the police cruiser and Corporal Walsh were the instrumentalities that caused the fleeing ATV to crash," and that he was "more in the nature of a pedestrian vis-à-vis the patrol car and, under the circumstances, Corporal Walsh was the aggressor and [Kuniskas] was not a 'fleeing motorist' within the holding of *Frazier*." *Kuniskas*, 977 A.2d at 604, 605.

We rejected Kuniskas' arguments, citing with approval *Ferguson*. In *Ferguson*, plaintiff Jenny Gallagher and her then-boyfriend (now husband) Richard Gallagher, were observed getting into a pickup truck owned and registered to Ms. Ferguson, which was parked at the side of a road, unoccupied. After the trooper noticed marijuana plants protruding from beneath a tarp in the bed of the vehicle, he returned to his marked cruiser to observe the pickup. The Gallaghers walked out of the woods and got into the vehicle and drove off, with the trooper following with his lights off. After the trooper turned on his headlights, the Gallaghers sped off and

the trooper pursued in an attempt to get the truck to pull over. Although the trooper testified he immediately activated his overhead lights and siren, Jenny Gallagher testified she did not see lights or hear any siren until later. The high speed pursuit was eventually joined by another trooper and at some point, Jenny Gallagher testified that she asked Richard to pull over and let her out of the vehicle. When she exited the vehicle, she stood at the side of the road while Richard again sped off in the truck. As she was standing on the side of the road, the trooper's car approached and struck Ms. Gallagher. In her federal lawsuit filed against the Commonwealth, the State Police and the state trooper, Ms. Gallagher asserted claims of excessive force under the United States and Pennsylvania Constitutions, as well as negligence.

■■ Defendants, citing *Frazier*, which in turn cited *Lindstrom*, argued that the trooper owed no duty of care to Ms. Gallagher as the courts of Pennsylvania have held that no common law or statutory duty is owed to a fleeing motorist. Ms. Gallagher attempted to distinguish both *Frazier* and *Lindstrom* on the ground that those cases involved police efforts to stop a motorist already in transit whereas she and her husband had been parked on the side of the road and pursuit was avoidable, and they both involved injuries or death as a result of the driver's own actions, not direct contact with the police vehicle itself as she incurred. Finally, Ms. Gallagher argued neither *Frazier* nor *Lindstrom* involved claims from a passenger in a vehicle, let alone a pedestrian standing at the side of the road such as herself. Ms.

Gallagher alleged that the trooper could have avoided the pursuit and arrested them before they got into the truck, but he decided he "wanted a car chase that night." *Ferguson,* slip op. at 7. In applying the factors to determine whether any duty was owing, the court found that, with respect to the fourth factor:

> [T]he consequences of imposing a duty upon officers would be quite burdensome; should [the officer] know how to distinguish between people in the fleeing vehicle to whom he owed a duty and those to whom he did not? Such a requirement would be unworkable in the field of law enforcement. An officer could not make a distinction during the chase whether the occupants are willingly in the fleeing vehicle or whether they knew about whatever evidence of criminality is in the vehicle.

*Id.* The court concluded that the trooper owed no duty of care either to the fleeing driver or the passenger. We find this analysis persuasive. As in *Lindstrom,* the public's "interest in ensuring that roadways remain safe from dangerous drivers and criminals and that police officers are empowered to enforce the law,"[10] is preeminent, and that interest is equally chilled by imposing a duty to passengers as to drivers. Accordingly, we hold that there is no duty of care to passengers whose existence, or whose connection to the driver and the conduct for which he is being pursued, is unknown to the officer. Because there was no duty of care, summary judgment was appropriate as a matter of law.[11]

We therefore affirm.

---

10. *Lindstrom,* 563 Pa. at 585, 763 A.2d at 397.

11. We note that it appears that the trial court may have improperly conducted fact-finding with respect to the video taken of the pursuit when it "found, after reviewing all of the

uncontroverted evidence of record, that Officer Howley did in fact act reasonably at all times relevant." Trial Court's Opinion at 7. However, it is within the province of this court to affirm the action of the trial court, "even if that action was based on an errone-

## ORDER

AND NOW, this 5th day of June, 2013, the order of the Court of Common Pleas of Montgomery County in the above-captioned matter is hereby AFFIRMED.

DISSENTING OPINION BY Judge LEAVITT.

Respectfully, I dissent. In granting summary judgment to the Township of Abington and its Police Department (Appellees), the trial court erred by making its own findings of fact about whether the police officers breached their duty of care to Decedent, a passenger in the vehicle pursued by the police. The majority acknowledges this error of the trial court but dismisses it as harmless error by establishing a new common law principle. Under this new principle, police in pursuit of a fleeing vehicle have no duty of care to passengers in that vehicle, even innocent bystanders such as kidnap victims, unless the police know of the presence of these passengers. I do not believe this principle properly extends existing common law. In any case, it establishes a standard that requires findings of fact in this case because the evidence is conflicting on whether the police knew that there were passengers in the vehicle under pursuit. Because material facts are in dispute, I would reverse the trial court's grant of summary judgment.

The Judicial Code immunizes local agencies from suit except for circumstances where the General Assembly has specifically waived their immunity. *See* 42 Pa. C.S. §§ 8541–8542 (Tort Claims Act). To invoke one of the waivers of immunity, a plaintiff must first establish:

(1) The damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having available a defense under section 8541 (relating to governmental immunity generally) or section 8546 (relating to defense of official immunity); and

(2) The injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b).

42 Pa.C.S. § 8542(a). Once a plaintiff establishes a cause of action under common law, the plaintiff then must show that the local government can be held liable for damages under one of the exceptions to immunity enumerated in Section 8542 of the Tort Claims Act. Relevant to this case is the exception to immunity found at Section 8542(b)(1) of the Tort Claims Act, which states:

(b) Acts which may impose liability.— *The following acts* by a local agency or any of its employees *may result in the imposition of liability* on a local agency:

(1) Vehicle liability.—The *operation of any motor vehicle in the possession or control of the local agency,* provided that *the local agency shall not be liable to any plaintiff that claims liability under this subsection if the plaintiff was,* during the course of the alleged negligence, *in flight or fleeing apprehension or resisting arrest by a police officer or knowingly aided a group, one or more of whose members were in flight or fleeing apprehension or resisting arrest by a police officer.* As used in this paragraph, "motor vehicle" means any vehicle which is

ous procedure, if there are independent grounds for affirmance." *Concord Township*

*Appeal,* 439 Pa. 466, 469, 268 A.2d 765, 766 (1970).

self-propelled and any attachment thereto, including vehicles operated by rail, through water or in the air.

42 Pa.C.S. § 8542(b)(1) (emphasis added).

Decedent's representatives assert that he was neither in flight nor aiding a person in flight and, thus, his cause of action fits the exception set forth in Section 8542(b)(1). However, before considering the evidence relevant to this point, Decedent's representatives must meet the threshold requirement under Section 8542(a), namely, that Appellees owed Decedent a common law or statutory duty of care.[1] The majority concludes that Appellees owed no duty of care to Decedent, but this conclusion cannot be reconciled with our Supreme Court's precedent on the question of a police officer's duty of care in the situation of a police pursuit.

The majority states, correctly, that police officers owe no duty of care to the wrongdoers they pursue, *Lindstrom v. City of Corry*, 563 Pa. 579, 763 A.2d 394 (2000), but do owe a duty to "innocent bystanders." *Aiken v. Borough of Blawnox*, 747 A.2d 1282, 1285 (Pa.Cmwlth.2000) (because fleeing criminals and those who aid them are excluded from Section 8542(b)(1), "innocent bystanders ... can maintain an action against the government alleging that police officers negligently maintained a high-speed pursuit."). The majority concludes, relying upon *Lindstrom*, that an officer's common law duty to innocent bystanders does not include passengers in a fleeing vehicle unless the officer knows of their presence. This reliance is misplaced because *Lindstrom* is inapposite.

In *Lindstrom*, a police officer decided to pull over Ramsey Lindstrom and activated his flashing lights. Lindstrom did not re-

spond, and the officer began to follow him. During the ensuing pursuit, Lindstrom lost control of his vehicle, which struck several curbs and a tree and flipped over. Lindstrom died from the injuries he sustained in the accident. His parents sued the city, alleging its officer was negligent in initiating and continuing a high speed chase. The trial court granted the city's motion for judgment on the pleadings asserting governmental immunity under the Tort Claims Act.

On appeal, the Supreme Court first considered whether Lindstrom's parents (appellees) met the threshold requirement of establishing that the city owed Lindstrom a duty of care under our common law. In deciding this question, the Court weighed several public policy factors:

(1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution.

*Lindstrom*, 563 Pa. at 585, 763 A.2d at 397 (citing *Althaus v. Cohen*, 562 Pa. 547, 553, 756 A.2d 1166, 1169 (2000)). After weighing each of these factors, the Court held that a local agency and its employees do not owe a common law duty to fleeing wrongdoers, preventing such wrongdoers from satisfying the first condition to qualify for the immunity exception set forth in Section 8542(a) of the Tort Claims Act. The Supreme Court cited with approval, *inter alia*, a decision of the Alaska Supreme Court that public policy is not served by imposing a duty upon police to protect fleeing offenders from their own

---

1. The majority does not discuss whether Appellees owed a statutory duty of care to Decedent. As will be discussed later in this opinion, I believe the statutory duty of care imposed by the Vehicle Code is the same as that imposed at common law.

actions. *Id.* (citing *Estate of Day v. Willis,* 897 P.2d 78 (Alaska 1995)).

The Court in *Lindstrom* specifically noted the inapplicability of its holding to innocent bystanders, stating that its decision in *Jones v. Chieffo,* 549 Pa. 46, 700 A.2d 417 (1997) (plurality)

> is not relevant to the issue of whether a local agency owes a common law duty to a driver who flees from a police officer. *Jones* involved an innocent third party injured during the course of a police chase, which does not influence our analysis regarding the duty owed to a fleeing suspect himself.

*Lindstrom,* 563 Pa. at 586 n. 2, 763 A.2d at 397 n. 2. In *Jones,* the Supreme Court reconsidered its prior ruling in *Dickens v. Horner,* 531 Pa. 127, 611 A.2d 693 (1992), which had established that police could not be held liable for damages suffered by third parties injured in a collision with a vehicle under police pursuit. In *Jones,* the Supreme Court overruled *Dickens.* It held that the negligent or criminal acts of fleeing suspects do not, as a matter of law, constitute a superseding cause that prevents a trier of fact from finding that the negligent acts by police officers were a substantial factor in causing innocent bystanders harm. *See also Aiken,* 747 A.2d at 1285 ("A determination of whether an act is so extraordinary as to constitute a superseding cause is normally one to be made by the jury.") (quoting *Powell v. Drumheller,* 539 Pa. 484, 495, 653 A.2d 619, 624 (1995)).

Yet, just as *Jones* was unhelpful in an analysis of whether a common law duty is owed to fleeing wrongdoers, an examination of the five *Lindstrom* public policy factors does not aid our analysis here [2] because the common law of this Commonwealth has long held that every motorist owes a duty of care to everyone in the operation of his or her vehicle. The factors considered in *Lindstrom* are used when defining a novel concept of duty in a changing society not yet addressed by the General Assembly. *See Sinn v. Burd,* 486 Pa. 146, 164, 404 A.2d 672, 681 (1979).[3] Here, the duty of care owed by the operator of an emergency vehicle, including a police car, is not novel and has been established by the legislature.

The motorist's duty of care, long in existence at common law, was first incorporated into a comprehensive statutory scheme in this Commonwealth by the General Assembly in the beginning of the last century. *See, e.g., Lewis v. Wood,* 247 Pa. 545, 546–48, 93 A. 605, 606 (1915) (discussing the piecemeal legislation addressing motor

---

**2.** In any case, the *Lindstrom* examination of the five factors does not answer the question posed here, which is the duty of care to an innocent bystander who happens to be a passenger in a vehicle under police pursuit.

**3.** Examples of the types of novel legal questions that have required the Pennsylvania Supreme Court to weigh the factors identified in *Lindstrom* when analyzing whether or not to recognize the existence of a duty include: *R.W. v. Manzek,* 585 Pa. 335, 888 A.2d 740 (2005) (recognizing duty of private fundraising entities to warn children and parents of the danger of using children as fundraisers in school fundraising activities and competition); *Bilt–Rite Contractors, Inc. v. The Architectural Studio,* 581 Pa. 454, 866 A.2d 270 (2005) (recognizing design professionals' duty of reasonable care in supplying information relied upon by others); *Sharpe v. St. Luke's Hospital,* 573 Pa. 90, 821 A.2d 1215 (2003) (recognizing an employer's duty of reasonable care owed to an employee in the collection and handling of urine specimen for drug testing); *Atcovitz v. Gulph Mills Tennis Club, Inc.,* 571 Pa. 580, 812 A.2d 1218 (2002) (declining to recognize a tennis club's duty to acquire and maintain an automated external defibrillator for use by unqualified and untrained individuals in emergency situations); *Althaus,* 562 Pa. 547, 756 A.2d 1166 (declining to recognize duty of care owed by therapist to non-patient parents of minor patient).

vehicles in the early 1900s, a comprehensive scheme enacted in 1911, as well as the underlying common law duty of reasonable care owed by all motorists); *Unangst v. Whitehouse*, 235 Pa.Super. 458, 344 A.2d 695, 698 (1975) (discussing the incorporation of the common law principle of the "assured clear distance ahead" rule into prior versions of the Vehicle Code). The current iteration of the Vehicle Code has codified the common law rules of the road that are used to determine whether a driver has fulfilled his duty to another, has acted negligently, or must be found negligent *per se* due to violations of specific provisions of the Vehicle Code. *Sodders v. Fry*, 32 A.3d 882, 887 (Pa.Cmwlth.2011) (internal citations omitted). The Vehicle Code incorporates the reasonable person standard familiar from common law. *See, e.g.*, 75 Pa.C.S. § 3361.[4]

Within the Vehicle Code, the General Assembly grants certain privileges to the drivers of emergency vehicles, including police officers.[5] 75 Pa.C.S. § 3105. The language of Section 3105 speaks in absolutes, such as the privilege to "park or stand, irrespective of the provisions of this part," when responding to an emergency. 75 Pa.C.S. § 3105(b)(1). Nevertheless, Section 3105 conditions this absolute privilege on "the duty to drive with due regard for the safety of all persons." 75 Pa.C.S. § 3105(e). Stated otherwise, Section 3105 of the Vehicle Code does not "relieve the driver" of the emergency vehicle of his common law duty to operate the emergency vehicle with due regard under the circumstances. *Lahr v. City of York*, 972 A.2d 41, 49–51 (Pa.Cmwlth. 2009); *Frazier v. Commonwealth*, 845 A.2d 253, 259–60 (Pa.Cmwlth.2004). Police officers operating their vehicles during emergency situations, including pursuits of fleeing suspects, have a duty "to drive with due regard for the safety of *all*

4. Section 3361 states:
   *No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions* and having regard to the actual and potential hazards then existing, nor at a speed greater than will permit the driver to bring his vehicle to a stop within the assured clear distance ahead. Consistent with the foregoing, every person shall drive at a safe and appropriate speed when approaching and crossing an intersection or railroad grade crossing, when approaching and going around curve, when approaching a hill crest, when traveling upon any narrow or winding roadway and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions.
   75 Pa.C.S. § 3361 (emphasis added).

5. Drivers of Emergency Vehicles.
   (a) General rule.—The driver of an emergency vehicle, when responding to an emergency call or when in the pursuit of an actual or suspected violator of the law . . . may exercise the privileges set forth in this section, but subject to the conditions stated in this section.

   (b) Exercise of special privileges.—The driver of an emergency vehicle may:
   (1) Park or stand, irrespective of the provisions of this part.
   (2) Proceed past a red signal indication or stop sign, but only after slowing down as may be necessary for safe operation. . . .
   (3) Exceed the maximum speed limits so long as the driver does not endanger life or property. . . .
   (4) Disregard regulations governing direction of movement, overtaking vehicles or turning in specified directions.
   (c) Audible and visual signals required.— The privileges granted in this section to an emergency vehicle shall apply only when the vehicle is making use of an audible signal and visual signals meeting the requirements and standards set forth in regulations adopted by the department.

   \*    \*    \*

   (e) Exercise of care.—*This section does not relieve the driver of an emergency vehicle from the duty to drive with due regard for the safety of all persons* . . . .
   75 Pa.C.S. § 3105 (emphasis added).

*persons.*" 75 Pa.C.S. § 3105(e) (emphasis added).

However, the Tort Claims Act limits a local government's liability for breach of its common law duty to operate a vehicle with due care in an emergency situation. Specifically, a plaintiff who is the driver of a fleeing vehicle, or someone assisting that driver, may not impose liability upon police, even where the police have breached their common law duty "to drive with due regard for the safety of all persons." The police enjoy immunity from such claims. 42 Pa.C.S. § 8542(b)(1). However, there is no immunity for claims brought against the government by innocent bystanders

injured as a result of a police pursuit. *Aiken,* 747 A.2d at 1285 ("[W]e hold that innocent bystanders, like Appellant, can maintain an action against the government alleging that police officers negligently maintained a high-speed pursuit."). In this respect, Pennsylvania stands with the overwhelming majority of states.[6]

In contrast to the near unanimity on the existence of a duty of care owed to innocent bystanders, the states are divided on how to define the duty of care owed by police officers to these innocent bystanders. Some states define this duty of care as a negligence standard and others as a reckless disregard standard.[7] In Pennsyl-

**6.** *See, e.g., Seals v. Columbia,* 575 So.2d 1061 (Ala.1991); *Hildebrandt v. City of Fairbanks,* 863 P.2d 240 (Alaska 1993); *Estate of Aten v. Tucson,* 169 Ariz. 147, 817 P.2d 951 (Ct.App. 1991); *City of Caddo Valley v. George,* 340 Ark. 203, 9 S.W.3d 481 (2000); *Cruz v. Briseno,* 22 Cal.4th 568, 93 Cal.Rptr.2d 715, 994 P.2d 986 (2000) (citing *Brummett v. County of Sacramento,* 21 Cal.3d 880, 148 Cal.Rptr. 361, 582 P.2d 952 (1978)); *Tidwell v. City & County of Denver,* 83 P.3d 75 (Colo.2003); *Tetro v. Stratford,* 189 Conn. 601, 458 A.2d 5 (1983); *Jones v. Crawford,* 1 A.3d 299 (Del.2010); *Pinellas Park v. Brown,* 604 So.2d 1222 (Fla. 1992); *Cameron v. Lang,* 274 Ga. 122, 549 S.E.2d 341 (2001); *Athay v. Stacey,* 142 Idaho 360, 128 P.3d 897 (2005); *Suwanski v. Village of Lombard,* 342 Ill.App.3d 248, 276 Ill.Dec. 766, 794 N.E.2d 1016, *appeal denied,* 206 Ill.2d 645, 282 Ill.Dec. 485, 806 N.E.2d 1073 (2003); *Patrick v. Miresso,* 848 N.E.2d 1083 (Ind.2006); *Morris v. Leaf,* 534 N.W.2d 388 (Iowa 1995); *Robbins v. City of Wichita,* 285 Kan. 455, 172 P.3d 1187 (2007); *Jones v. Lathram,* 150 S.W.3d 50 (Ky.2004); *Nelson v. State Department of Public Safety,* 581 So.2d 344, *cert. denied,* 586 So.2d 561 (La.1991); *Boyer v. State,* 323 Md. 558, 594 A.2d 121 (1991); *Harrison v. Town of Mattapoisett,* 78 Mass.App.Ct. 367, 937 N.E.2d 514 (2010); *Robinson v. City of Detroit,* 462 Mich. 439, 613 N.W.2d 307 (2000); *Thompson v. City of Minneapolis,* 707 N.W.2d 669 (Minn.2006); *City of Ellisville v. Richardson,* 913 So.2d 973 (Miss.2005); *Stanley v. City of Independence,* 995 S.W.2d 485 (Mo.1999); *Eklund v. Trost,* 335 Mont. 112, 151 P.3d 870 (2006); *Henery*

*v. City of Omaha,* 263 Neb. 700, 641 N.W.2d 644 (2002); *Saarinen v. Kerr,* 84 N.Y.2d 494, 620 N.Y.S.2d 297, 644 N.E.2d 988 (N.Y. 1994); *Parish v. Hill,* 350 N.C. 231, 513 S.E.2d 547 (1999); *Jones v. Ahlberg,* 489 N.W.2d 576 (N.D.1992); *Robertson v. Roberts,* 2004–Ohio–7231, 2004 WL 3090216 (Ohio Ct. App.2004) (unreported), *appeal denied,* 105 Ohio St.3d 1562, 828 N.E.2d 117 (2005); *State ex rel. Oklahoma Department of Public Safety v. Gurich,* 238 P.3d 1 (Okla.2010); *Lowrimore v. Dimmitt,* 310 Or. 291, 797 P.2d 1027 (1990); *Seide v. State,* 875 A.2d 1259 (R.I.2005); *Clark v. South Carolina Department of Public Safety,* 362 S.C. 377, 608 S.E.2d 573 (2005); *Hall v. City of Watertown,* 636 N.W.2d 686 (S.D.2001); *Haynes v. Hamilton County,* 883 S.W.2d 606 (Tenn.1994); *Travis v. City of Mesquite,* 830 S.W.2d 94 (Tex.1992); *Day v. State ex rel. Utah Department of Public Safety,* 980 P.2d 1171 (Utah 1999); *Rochon v. State,* 177 Vt. 144, 862 A.2d 801 (2004); *Colby v. Boyden,* 241 Va. 125, 400 S.E.2d 184 (1991); *Mason v. Bitton,* 85 Wash.2d 321, 534 P.2d 1360 (1975); *Peak v. Ratliff,* 185 W.Va. 548, 408 S.E.2d 300 (1991); *Estate of Cavanaugh by Cavanaugh v. Andrade,* 202 Wis.2d 290, 550 N.W.2d 103 (1996); *Board of County Commissioners of Teton County v. Bassett,* 8 P.3d 1079 (Wyo. 2000); *District of Columbia v. Hawkins,* 782 A.2d 293 (D.C.2001).

**7.** *See, e.g., Fielder v. Stonack,* 141 N.J. 101, 661 A.2d 231 (1995) (discussing willful misconduct standard applied in tort actions stemming from police pursuits, following the re-

vania, it is a negligence standard. However, as far as can be determined, no state has conditioned the duty of care owed to an innocent bystander on the defendant's knowledge of the innocent bystander's presence.

In *Johnson v. City of Philadelphia*, 808 A.2d 978, 981 (Pa.Cmwlth.2002), we reviewed the Vehicle Code, which, over time, has redefined the duty of care owed by a driver in an emergency situation. Originally, the standard of care for vehicle operators in an emergency situation was "reckless disregard." It was replaced with "due regard for the safety of all persons." 75 Pa.C.S. § 3105(e). Accordingly, the legislature has defined the standard of care owed to innocent bystanders as the reasonable person standard. To assist police in the actual application of this standard, the legislature requires municipalities to develop and implement policies "governing the procedures under which a police officer should initiate, continue and terminate a motor vehicle pursuit." 75 Pa.C.S. § 6342(a). These provisions do not increase police liability, *see* 75 Pa.C.S. § 6345, or change the standard of care enunciated in *Johnson*, (*i.e.*, negligence under emergency situations). However, the policies developed and implemented by a municipality can serve as one factor in making the factual finding of whether police operated their vehicles with due regard under the circumstances. *Frazier*, 845 A.2d at 260.

In summary, whether a police officer owes a duty of care to a passenger in a fleeing vehicle is not, as the majority believes, answered by implication in *Lindstrom*. *Lindstrom* distinguished fleeing wrongdoers from innocent bystanders and found no common law duty owed to the

former. The duty owed to everyone else in the world, including innocent bystanders wherever they may be, remains "due regard for the safety of all persons," *i.e.*, negligence under emergency situations. *Johnson*, 808 A.2d at 982.

I am also not persuaded by the majority's reliance on the Western District of Pennsylvania's non-binding decision in *Ferguson v. Commonwealth*, Civ. A. No. 05–280E, 2009 WL 723426 (W.D.Pa. March 13, 2009). In *Ferguson*, Jenny Gallagher was a passenger in a vehicle being pursued by state troopers during a high speed chase. She exited the vehicle when the driver slowed to navigate a T-intersection. Gallagher was standing on the side of the road when the pursuing trooper's vehicle struck and injured her.

Gallagher filed a civil action against the State Police and the officer in his individual capacity. Count one of her complaint alleged violations of 42 U.S.C. § 1983 for federal constitutional claims. Count two alleged, alternatively, that defendants' conduct constituted actionable negligence, and that the Commonwealth and State Police should be liable for the conduct of their employees under the theory of *respondeat superior*. The district court exercised supplemental jurisdiction over Gallagher's state law claims.

The district court denied defendants' motion for summary judgment on Gallagher's constitutional claims, holding that there were genuine issues of material fact with respect to whether the officer intentionally struck Gallagher with his vehicle or was deliberately indifferent to her substantive due process right to bodily integrity. As for Gallagher's negligence claim in count two, the district court granted defen-

jection of a negligence standard in *Tice v. Cramer*, 133 N.J. 347, 627 A.2d 1090 (1993), as a result of the absolute immunity for inju-

ries that would not have occurred but for the negligence of police conferred by the New Jersey Tort Claims Act, N.J.S.A. 59:5–2b(2)).

dants' motion for summary judgment. The court found that because it was not reasonably foreseeable, or remotely probable, that the fleeing driver's passenger, Gallagher, would exit the vehicle in the middle of the chase, the police owed no duty of care to Gallagher.[8] Crucial to the court's analysis was the undisputed fact that the officer believed one, if not both, of the individuals in the vehicle was unlawfully possessing drugs since he had observed marijuana plants in the bed of the truck before initiating the pursuit. In the case at bar, there is a factual dispute about whether Officer Howley knew there were passengers in the fleeing vehicle, let alone whether the passengers were engaged in criminal activity. This is a crucial difference. The district court cautioned that its holding was limited to the circumstances present in *Ferguson*. The facts in *Ferguson* are so different from the facts presented here that the holding is not instructive.

For more applicable non-binding persuasive authority, I would follow the Supreme Court of Michigan's analysis of a police officer's duty of care to passengers in *Robinson v. City of Detroit*, 462 Mich. 439, 613 N.W.2d 307 (2000). *Robinson* involved two separate cases, which were consolidated, that involved passengers in fleeing vehicles who were injured in the course of a police chase. In both cases, the driver sped away from the police and crashed his car. In one case the passenger survived his injuries, and in the other the passenger was killed. In considering the plaintiffs' threshold burden to establish a common law duty of care, the Michigan Supreme Court held that "the police owe a duty to innocent persons whether those persons are inside or outside the vehicle. Conversely, the police owe no duty to a wrongdoer, whether the wrongdoer is the fleeing driver or a passenger." *Id.* at 314. The Court reasoned that this duty to *all* innocent persons is consistent with Michigan's statutes governing operation of emergency vehicles. The Court continued:

> We place on the plaintiff the burden of proving that a passenger was an innocent person and that the police therefore owed the passenger a duty. Where no genuine issue of material fact exists regarding the status of a passenger, summary disposition may be appropriate. However, when a genuine issue of material fact exists concerning whether a passenger is innocent or a wrongdoer, and thus whether the police owed a duty, the question is appropriately resolved by the trier of fact.

*Id.*[9]

The case *sub judice* illustrates the wisdom of Michigan's approach, which places the burden on the plaintiff to prove his innocence as a precondition to establishing liability for a police officer's negligent con-

---

**8.** The district court also emphasized that Gallagher did not become an innocent bystander once she exited the vehicle. I believe the district court erred in rendering such a finding on summary judgment. Reasonable minds could differ about Gallagher's criminal culpability once she was no longer a passenger in the fleeing vehicle.

**9.** The Michigan Supreme Court went on to hold that defendants were entitled to summary judgment because plaintiffs could not establish causation. Applying a narrow construction of Michigan's vehicle exception to

immunity, which waives immunity for damages "resulting from the negligent operation" of a police vehicle, the Court held that plaintiffs had to show that the officer actually hit the fleeing vehicle or physically forced it off the road or into another object. The Court also held that a police officer's decision to pursue a fleeing motorist is distinct from the operation of the vehicle itself, and is not encompassed in the phrase "operation of a motor vehicle." The Pennsylvania Supreme Court has expressly rejected that distinction. *See Aiken,* 747 A.2d at 1285.

duct of a pursuit. Whether Decedent was an "innocent bystander" is a question of fact that requires making credibility determinations in order to resolve the conflicting evidence. Decedent's representatives offered evidence that Decedent and the other passenger attempted to convince Simons, the "fleeing criminal," to slow his vehicle down and pull over. If true, this would mean that Decedent did not aid Simons in his flight from apprehension. If Simons' actions are found to be a superseding cause of the fatal accident, that finding will preclude Decedent's claim against Appellees. *Aiken*, 747 A.2d at 1285. However the determination of "whether an act is so extraordinary as to constitute a superseding cause is normally one to be made by the jury." *Powell v. Drumheller*, 539 Pa. 484, 495, 653 A.2d 619, 624 (1995). Resolution of these questions, which turns on whether Decedent's evidence is credible, requires factual findings by a jury.

Also requiring factual findings and credibility determinations is the question of whether the Abington police officers acted reasonably under the circumstances. This requires consideration of the dashboard audio and video recording as well as witness testimony on the animosity between the Abington Police Department and members of the O'Neil family. The red Mustang driven by Simons had previously been owned by a member of the O'Neil family. Decedent's representatives suggest this evidence shows that Officer Howley's mistake about Simons' identity is what prompted the high speed pursuit. A factfinder could also consider the Abington Police Department's pursuit policy and whether the officers had adhered to the policy on the evening in question.

The majority announces a new common law principle that I believe is inconsistent with *Jones* and inconsistent with 42 Pa. C.S. § 8542(b)(1). Specifically, the majority holds "that there is no duty of care to passengers whose existence, or whose connection to the driver and the conduct for which he is being pursued, is unknown to the officer." Op. at 871. The whole point of holding officers liable for the conduct of their vehicle pursuits is that they do not know how, when or where an innocent bystander may be injured when a pursuit takes place. *Aiken*, 747 A.2d at 1283. The duty of care imposed on police is a social duty and necessarily one owed to an unknown group of persons. In this case, the pursuit took place in a residential neighborhood. Someone could have been injured by Simons' vehicle or the police vehicle while taking the family dog out for a late night walk. Nothing in the language of 42 Pa.C.S. § 8542(b)(1) or our precedent in *Aiken* suggests that the police must know of the presence of the passenger to be held liable. Such a rule places kidnap victims at risk.

In any case, the majority's newly limited duty of care invites factual determinations. Evidence is required about what a pursuing officer knows about the existence of a passenger in a fleeing vehicle and the passenger's connection to the criminal conduct. Here, Decedent's representatives presented evidence that Officer Howley passed Simons' vehicle and did a U-turn to initiate the pursuit, creating a question as to whether the officer knew or should have known there were passengers in the vehicle. These questions about Officer Howley's knowledge make summary judgment inappropriate in this case.[10]

10. Under the majority's new standard, summary judgment will be inappropriate except in the unusual case where the plaintiff presents no evidence of the police officer's knowledge.

The majority acknowledges that the trial court made its own findings of fact and that this is error in any summary judgment case. Specifically, the trial court viewed the dashboard video and then found that the police acted "reasonably at all times." Trial Court Opinion at 7.

Officer Howley stated that he heard the exhaust of the vehicle before he saw tail-lights far ahead and that upon attempting to gain on the vehicle, he accelerated beyond the speed limit. This led him to believe that the vehicle was speeding. The sound of the exhaust on Simons' vehicle has not been identified in the dashboard video, nor does the video record the speed of either vehicle. The dashboard video does not make clear how Officer Howley was able to identify the vehicle he was pursuing as a red Mustang; the vehicle's color is shown on the dashboard video only after it has crashed and is lit by the spotlight from Officer Howley's vehicle. The dashboard video shows that Officer Howley's vehicle proceeded through multiple stop signs at intersections on residential streets. The video does not resolve whether the officer complied with the emergency vehicle doctrine in the Vehicle Code by slowing his high rate of speed and checking for vulnerable persons or property. Decedent offered expert opinion evidence that Officer Howley's pursuit and Lieutenant Knott's instructions repeatedly violated the pursuit policies of the Abington Police Department. The parties take contradictory stances on the import of the time and duration of the pursuit, the condition of the streets and density of the neighborhood, and the type of threat posed to public safety by the pursued vehicle. All those relevant facts are intertwined and open to interpretation. The trial court resolved all these factual disputes in favor of the Appellees on the basis of the video, and this was error.

Summary judgment is appropriate only where there is no genuine issue of fact, and all doubts about the existence of a genuine issue of fact must be resolved against the moving party. "Only when the facts are so clear that reasonable minds could not differ can a trial court properly enter summary judgment." *Kvaerner Metals Divisions of Kvaerner U.S., Inc. v. Commercial Union Insurance Company,* 589 Pa. 317, 329, 908 A.2d 888, 896 (2006). Because reasonable minds can differ about the facts material to the question of whether Appellees' pursuit of Simons was negligent, summary judgment is not appropriate here. Even the majority's newly announced duty of care requires findings of fact on whether Officer Howley had knowledge of the passengers in Simons' vehicle because the evidence is conflicting on his knowledge.

I would reverse the trial court's order and remand for further proceedings even under the majority's newly restricted duty of care owed to those innocent bystanders who happen to be in a vehicle under pursuit. I believe, however, that the common law duty of care owed to an innocent bystander is not conditioned by the police officer's knowledge of their presence in a vehicle under pursuit. Accordingly, on remand, I would allow Decedent's representatives to present their evidence to a jury on whether Decedent was an innocent bystander and, if so, whether Appellees breached their duty of care to him.